[S. F. No. 17454.   In Bank.   Apr. 28, 1947.]

DEPARTMENT OF SOCIAL WELFARE, Petitioner, v. COUNTY OF KERN et al., Respondents.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Petitioner.

Norbert Baumgarten, County Counsel, for Respondents.

Harold W. Kennedy, County Counsel (Los Angeles), and Gerald G. Kelly, Deputy County Counsel, as Amici Curiae, on behalf of Respondents.

CARTER, J.—Petitioner, Department of Social Welfare of the State of California, seeks by mandamus to compel Kern County to grant aid to needy children and their caretaker regardless of the caretaker's eligibility to general relief. The solution of the case rests upon the interpretation of the statutory provisions for aid to needy children (Welf. & Inst. Code, §§ 1500-1580) and the rules adopted by the department pursuant thereto.

We are concerned here only with needy children who do not receive institutional care. Needy children are described in section 1500 of the Welfare and Institutions Code. The object and purpose of the statute with reference to such children is ". . . to provide aid for children whose dependency is caused by circumstances defined in sections 1500 and 1501 and to keep children in their own homes wherever possible and to provide the best substitute for their own homes for those children who must be given foster care." (Welf. & Inst. Code, § 1503.) And it is to be liberally construed to effect those objects and purposes. (§ 1507.) A child to qualify (with certain exceptions not here pertinent) must have been a resident of the state by being physically present therein for one year, or having parents who have been residents for one year, or born here (§ 1525); he must be a resident of the county for a year as residence is there defined (§ 1526). With reference to who must bear the burden of the aid, there is provided out of state moneys to each county for each child *not in excess of* $180 per year, or $15 per month, if the county residence is satisfied, otherwise $270 per year, $22.50 per month (§ 1510). "For each needy child qualifying for aid under the provisions of this chapter, . . . there shall be paid the sum of . . . ($22.50) per month, or so much thereof as is necessary for the adequate care of the child. The State shall pay 66⅔ per cent and the county shall pay 33⅓ per cent of the aid furnished for the adequate care of any needy child who has a county residence, but the State shall not pay more than . . .

($15) for any month or portion of a month for any needy child who has such county residence.

[1] "Any county *may* pay from its own funds additional sums for the care of any needy child, and the State and county. *may* pay such aid as is needed for the adequate care of the family from other State or county funds.

[2] "Minimum standards of adequate care shall be determined by the rules and regulations of the State Department of Social Welfare, approved by the State Board of Social Welfare. The rules and regulations shall be distributed to the counties and shall be binding upon them." (§ 1511.) [Emphasis added.] (The foregoing paragraphs are numbered for convenience in reference.) The department shall "(a) make rules and regulations for the proper maintenance and care of needy children; (b) make rules and regulations for the administration of aid to needy children; (c) inquire, at any time, . . . into the management, by any county, of aid to needy children. Such rules and regulations shall be binding upon the institutions and counties." (§ 1560.) If compliance with the rules or statute by the county cannot be enforced in any other manner, aid may be withheld from the county. (§ 1560.)

The department's rule reads: "Aid shall be granted in accordance with the ANC [aid to needy children] standard of adequacy with respect to children eligible to ANC *and their caretaker (regardless of the caretaker's eligibility to general relief)*, except that when ANC is granted on a non-county basis the county supplemental aid is granted as the county in its discretion may determine.

"When the county includes in the determination of the amount of the grant the needs of the parent (other than the caretaker), ineligible minors, or the stepparent in accordance with the ANC standard, ANC may be granted as thus determined and the State will participate to the extent as provided in Section 1511 of the W&IC.

"When the needs of other individuals in the household are not determined in accordance with the ANC standard, the county shall grant aid for them in accordance with general relief standards if they are otherwise eligible for general relief.

"Individuals who are ineligible to general relief or other categories of aid may be granted such aid as the county in its discretion shall determine." (§ 158-07, SDSW Manual.) [Emphasis added.]

■ It is the department's contention that under the foregoing the respondent county must, without state assistance, give additional aid to eligible needy children where the caretaker of the child is not qualified by residence for aid, but is in fact needy and as a result cannot give adequate home care for the child; that the statute imposes such obligation and grants the power to the department. Upon the county's refusal to give the aid an appeal was taken and the State's Social Welfare Board ordered it to be given.

There is nothing in the statute that imposes such an obligation on the county. The county is required to bear its stated share up to $22.50 per month. The state is limited in its contribution to the amounts specified. Under section 1511 the sum of $22.50 is specified as the amount to be paid or "so much thereof," that is, of the $22.50, as is necessary "for the adequate care of the child." The state and county each shall pay a fixed per cent of "the aid furnished for the adequate care of any needy child." The "aid furnished" can only refer to the $22.50 or a less amount if all of that sum is not required. Both county and state are authorized to make additional payments in aid of needy children. Under paragraph [1] of section 1511 the word "may" is used, a word of permission or authorization but not of compulsion. That word is defined: " 'Shall' is mandatory and 'may' is permissive." (Welf. & Inst. Code, § 15.) Hence there is no basis for asserting that the statute imposes a mandatory duty on a county to give additional aid. The matter is left to its discretion.

■ Paragraph [2] of section 1511 states that the "minimum" standards of adequate care must be fixed by the department through rules and regulations and such standards are binding upon the counties. Assuming that the rule of the department, above quoted, does impose on the counties the obligation to increase the aid in order to give consideration to the needy caretaker (respondent county claims it does not), and it does so to a point where more than $22.50 must be paid, thus increasing the amount payable by the county to more than $7.50, the question arises as to whether the department has exceeded its powers in adopting the rule. Is it within the area of its discretion as found in the statute? Plainly the Legislature in fixing the sum of $22.50 in section 1511 intended to establish a maximum. Hence the grant of power to the department in paragraph [2] is concerned

only with minimum standards of adequate care, insofar as that relates to the sum of the aid payable below that maximum. That is to say, the authority given to the department is limited by the legislative maximum. To hold otherwise would make the $22.50 provision meaningless; that is, as far as the county is concerned. The maximum to be supplied by the state is unequivocally stated. With no ceiling, the department could increase the aid to be furnished by the county to any amount. If it is said that the amount of the state's contribution could be increased also under paragraph [2], then the restrictions on the state's maximum as fixed by the Legislature would be without significance. While the maximum for the state is perhaps more positively stated, yet there is no ambiguity or uncertainty as to the total amount of aid that the county may be compelled to supply.

In the face of the positive language of the statute the foregoing construction is not altered by the requirement of liberal construction or the expression of policy to keep needy children in homes rather than institutions. The latter policy may still be effective within the framework of the provision for the maximum amount of aid that can be required of the county and also where the county voluntarily gives additional aid, which it may do. It may at first blush seem that the policy of having needy children kept in homes which involves a caretaker, coupled with the one year residence requirement, is inconsistent with the residence requirement for adults, but that is a matter for legislative correction.

The aid for needy children program is assisted by the federal government (42 U.S.C.A. 601-605), and it is suggested that the failure of the county to give additional aid in order to give consideration to the caretaker, and the absence of a right in the department to compel it to do so, will jeopardize the federal grants. We fail to see how the refusal of the county to give additional aid will have that result. True, the federal statute requires uniform administration and supervision by a state wide agency but we have exactly that here. It is only in the matter of whether additional aid may be compelled that its powers are limited.

The alternative writ is discharged and the petition for a peremptory writ denied.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.