[S.F. No. 22788. In Bank. Apr. 28, 1971.]

JOHN D. MOONEY, Petitioner, v.
GEORGE PICKETT, as Director, etc., et al., Respondents.

## COUNSEL

Jay-Allen Eisen for Petitioner.

Keith C. Sorenson, District Attorney, and James A. Aiello, Deputy District Attorney, for Respondents.

## OPINION

**TOBRINER, J.**—Petitioner John Mooney, for himself and others similarly situated, seeks mandamus to compel the Department of Public Health and Welfare of the County of San Mateo, the director of the department,[1] and its superintendent of the social services division, to grant him General Assistance welfare payments. Respondents, in refusing petitioner General Assistance, rely on county regulation GA-08 [the so-called "employable single man" rule] which denies non-emergency General Assistance to employable single men. ██ We hold that this rule does not conform to the mandate of Welfare and Institutions Code section 17000: the language of that section, its companion provisions, its legislative history, and its judicial construction all compel the conclusion that county General Assistance cannot be denied on grounds of employability. Because of factual questions concerning petitioner's eligibility for General Assistance, we

---

[1] By order of this court December 22, 1970, George Pickett, Director of the Department of Public Health and Welfare of San Mateo County, was substituted as a respondent in place of James Bodie, the former acting director of the department.

do not require the payment of General Assistance relief to petitioner; instead we mandate respondents not to deny such aid on grounds of employability.

1. *Summary of statutes and regulations pertaining to petitioner's eligibility for General Assistance.*

Before recounting the facts of this litigation, we set forth the superstructure of state statute, county ordinance, and county regulation which forms the setting of this case. Division 9 of the Welfare and Institutions Code establishes a variety of public social services; part 5 of this division (§ 17000 et seq.) provides for county aid and relief to indigents. Section 10000, which applies to all services under division 9, states the fundamental purpose of this legislation: "to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed."

The statutory provisions crucial to this action are Welfare and Institutions Code sections 17000 and 17001. Petitioner relied upon section 17000, which provides that "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions." The respondents in turn rely upon section 17001, which states that "The board of supervisors of each county, or the agency authorized by county charter, shall adopt standards of aid and care for the indigent and dependent poor of the county or city and county. . . ."

Article 14, section 2337 of the San Mateo County Ordinance Code effectively reiterates the provisions of Welfare and Institutions Code section 17000. Section 2339, however, adds the specification that "Employable persons who do not come within the definition of persons eligible for indigent aid as set forth in section 2337 hereof are not eligible for indigent aid; except in those cases in which there is illness in the family or where the welfare of children is threatened, emergency aid may be given for temporary periods with the approval of the Superintendent of Social Service or Director of Public Health and Welfare."

Although the respondents invoke section 2339 to justify their denial of aid to petitioner, this reliance appears misplaced. Section 2339, by its terms, denies aid only to such employable persons as "do not come within the definition of persons eligible . . . in Section 2337." Section 2337 includes "all incompetent, poor indigent persons . . . lawfully resident

in San Mateo County"; hence section 2339 does not preclude aid to employable indigents lawfully resident in the county.

In addition to the county ordinances, the county board of supervisors has approved certain regulations of the county department of public health and welfare. Regulation GA-04 provides, in terms similar to Welfare and Institutions Code section 17000, that "Persons eligible for indigent aid are defined as all incompetent, poor indigent persons and those incapacitated by age, disease, or accident, who are residents of San Mateo County and who have not sufficient income or resources to maintain themselves and/or to meet medical care needs. . . ." Regulation GA-08, however, clearly excludes non-emergency aid to employable persons. It states that "Generally speaking, employable persons are not eligible for General Assistance. However, in those cases in which the welfare of children is threatened or where there is illness in the family, emergency aid may be given with the approval of the Superintendent of Social Service Division. Assistance will be granted to employable adults only in emergencies. Such applicants shall be required to register with the California State Employment Service and shall verify their efforts to find employment as a condition of receiving aid. . . ."[2]

## 2. *History of this litigation.*

We turn now to the facts of the present action as alleged in the petition for mandate and not denied by respondents. Petitioner John Mooney, a resident of San Mateo County, was employed until December 1969, when his employment was terminated by his employer. He received unemployment compensation until May 1970; thereafter, he found temporary employment for one month. He then received unemployment compensation until July 5, 1970, when the unemployment benefits available to him were exhausted. Since December 1969 petitioner has been registered with the job referral service of the Department of Human Resources Development; he is classified by the department as a short-order fry cook and general laborer, but petitioner has placed no restrictions on the kind of work he would accept, the location of work, or the hours.

Because petitioner was still unable to find work, he decided to learn a marketable skill and on July 12, 1970, enrolled in the auto mechanic's

---

[2]County regulation GA-010, part d, states that "Employability must be determined through a medical and/or psychological examination of the client. Some emergency situations may arise in which it will be necessary to give temporary aid to provide food and shelter for a short period only. In such cases the aid must be given with the approval of the Section Supervisor." The parties do not discuss this regulation, and have not informed us what emergencies qualify an applicant for this assistance, or for how long such aid may be continued.

course at Opportunities Industrialization Center West (OICW) in Menlo Park. OICW is a private vocational training and job placement center which is funded by private contributions and by the United States Department of Labor. Its auto mechanics training requires about 37 weeks, but it does not provide any support to trainees during this period.

On July 14, 1970, petitioner applied to the Department of Public Health and Welfare of San Mateo County for General Assistance. The department denied his application on July 16, 1970, informing him that "You are ineligible because you are not incapacitated and are able to work, and state that you are registered for employment. According to San Mateo County regulations, only persons with a medically verifiable incapacity, physical or emotional, are eligible for General Assistance."

Petitioner then filed a petition for mandate in the San Mateo Superior Court (action number 151559) asking that court to require respondents to provide General Assistance to petitioner and all other persons similarly situated. In that case, on July 29, 1970, the parties, in lieu of presentation of testimonial evidence, executed and filed affidavits and an agreed stipulation of fact. The stipulated facts include: ". . . 3. On or about July 16, 1970, petitioner's application for General Assistance was denied on the basis that petitioner is employable and therefore ineligible for General Assistance under the provisions of County Ordinance Code, Art. 14 § 2339.

"4. On the information available to respondents, petitioner would be eligible for General Assistance but for the fact that he is employable.

"5. No hearing or agency appeal is provided by respondents' governing laws and regulations whereby petitioner may challenge the validity of the denial of his application for General Assistance."[3]

On the following day the parties filed a further stipulation which stated that "Respondents routinely deny General Assistance to employable applicants pursuant to County Ordinance Code, Art. 14, § 2339, regardless of the cause of applicant's unemployment, failure to find available work, or his efforts to seek employment." On September 30, 1970, the superior court issued judgment denying mandate. Petitioner appealed but also filed the present proceeding as an original action in mandamus in this court.

We exercise our original jurisdiction in mandamus only in cases in

---

[3]The parties also stipulated that "Petitioner brings this action for himself and all other persons who have been denied General Assistance solely because they are employable, pursuant to County Ordinance Code, Art. 14, § 2339. Respondents have acted on grounds generally applicable to each member of the class. There are common questions of law and fact uniting petitioner and the members of his class, all of whom seek exactly the same relief in this action. Petitioner will fairly and adequately represent the interests of the class in this proceeding."

which "the issues presented are of great public importance and must be resolved promptly." (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593].) The employable single man rule finds a counterpart in the regulations of many other California counties.[4] With the recent increase in unemployment, many residents of these counties who are mentally and physically employable find themselves in fact unable to obtain employment; the employable single man rule may deny such persons "the means to obtain essential food, clothing, housing and medical care." (See *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 264 [25 L.Ed. 2d 287, 297, 90 S.Ct. 1011].) The issue presented by this petition, consequently, is one of great public concern and importance throughout the state. (See *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 944-945 [92 Cal.Rptr. 309, 479 P.2d 669] and cases there cited.) A prompt resolution of this controversy is essential to avoid extreme hardship to petitioner, and others like him, who have no other means by which to live.[5] ■ In view of this consideration, we issued the alternative writ of mandamus; by so doing "we have necessarily determined that there is no adequate remedy in the ordinary course of law and that [this] case is a proper one for the exercise of our original jurisdiction." (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 773 [87 Cal.Rptr. 839, 471 P.2d 487]; *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 945 [92 Cal.Rptr. 309, 479 P.2d 669].)[6]

3. *Nonconformity of the employable single man rule with Welfare and Institutions Code section 17000.*

We shall explain that the provisions of sections 17000, 17001, 17111, and 17200 of the Welfare and Institutions Code, the legislative history of

---

[4]At least 13 counties, including Alameda, Contra Costa, Orange, San Diego, and Santa Clara, have regulations similar to the San Mateo County single man rule.

[5]Although petitioner has a remedy by way of appeal from the superior court judgment, "where the remedy by appeal is not speedy and adequate, then, in an otherwise proper case, mandate or prohibition may lie." (*Hampton* v. *Superior Court* (1952) 38 Cal.2d 652, 656-657 [242 P.2d 1]; see *Harden* v. *Superior Court* (1955) 44 Cal.2d 630, 635-636 [284 P.2d 9]; *City & County of S. F.* v. *Superior Court* (1951) 38 Cal.2d 156, 160-161 [238 P.2d 581]; *Mihans* v. *Municipal Court* (1970) 7 Cal.App.3d 479, 483 [87 Cal.Rptr. 17].)

[6]Code of Civil Procedure section 1085 states that mandamus may issue "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office. . . ." Respondents contend they are not proper parties to the present action on the ground that not they, but the county board of supervisors, are the persons specially enjoined by state statute to provide aid to indigents. San Mateo County, however, has by ordinance charged respondents with the duty of enforcing and obeying "all County ordinances and State laws" (Ordinance Code, art. 14, § 2331) and with administering assistance programs "in accordance with the State . . . statutes and regulations . . ." (Ordinance Code, art. 14, § 2333). Respondents

those enactments, and the cases construing them, all demonstrate that a county may not deny aid to otherwise eligible applicants on grounds of employability.

Section 17000 imposes a mandatory duty[7] upon the counties to support "all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident." Although this language imposes no condition of unemployability, respondents attempt to establish such a condition by reading the language of section 17000 in the conjunctive—i.e., that to receive aid an applicant must be poor, indigent, *and* incompetent;—they suggest that "incompetent" in this context means "unemployable." This strained construction of the statute, however, succumbs to an examination of other provisions of the laws on county General Assistance.

Section 17001, authorizing the county board of supervisors to adopt standards for eligibility, speaks simply of "the indigent and dependent poor." Of greater significance, section 17200 expressly provides that "Work may be required of an indigent, who is not incapacitated by reason of age, disease, or accident, as a condition for relief." Section 17111 states that "An applicant or recipient shall be permitted to retain, without effect on his eligibility for aid or the amount of aid to which he is otherwise entitled, the tools of his trade necessary to continue or seek employment and an automobile of reasonable value needed to seek or maintain employment in order to enable the applicant or recipient to become self-supporting." Thus sections 17111 and 17200 envision that the recipient of General Assistance may be a person capable of working on county relief projects, owning and able to use an automobile and the tools of his trade, and engaged in seeking employment to become self-supporting. ■ In other words, these sections contemplate that General Assistance will be given to recipients who are neither unemployable nor legally incompetent.[8]

---

thus are persons specially enjoined by county ordinance to follow the state welfare statutes.

[7] *Bd. of Soc. Welfare* v. *County of L. A.* (1945) 27 Cal.2d 81, 85 [162 P.2d 630]; *County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526]; see *County of Los Angeles* v. *Payne* (1937) 8 Cal.2d 563, 573 [66 P.2d 658]; 18 Ops. Cal. Atty. Gen. 88 (1951).

Section 17000 provides that the county "shall" relieve and support indigents, and Welfare and Institutions Code section 15 specifies that " 'Shall' is mandatory and 'may' is permissive." Compare *Dept. of Social Welfare* v. *Kern County* (1947) 29 Cal.2d 873 [180 P.2d 1], which held that under a statute providing that a county "may" aid caretakers of indigent children, the county had discretion to grant or refuse such aid.

[8] "The provisions of law relating to a public assistance program shall be liberally construed to effect the stated objects and purposes of the program." (Welf. & Inst. Code, § 11000; see *Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77, 89 [88 Cal.Rptr. 907].)

Petitioner and respondents both ask us to examine the legislative history of section 17000.[9] County General Assistance in California dates from 1855, and for many years afforded the only form of relief to indigents. (See Sen. Com. on Governmental Efficiency, Welfare in California (1970) pp. 98-99.) In 1931, with the increasing poverty and unemployment brought on by the depression, the Legislature amended the Pauper Act of 1901 (Stats. 1901, p. 636) to provide that "Every county and every city and county shall relieve and support all *pauper,* incompetent, poor, indigent persons and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, *or* by their own means, or by state hospitals or other state or private institutions." (2 Deering's Gen. Laws, 1931, Act 5814, p. 3131.) Except for the two underscored words, this language comports identically with that of Welfare and Institutions Code section 17000.

As the depression deepened, the City and County of San Francisco sought to issue and sell municipal bonds to raise money to support its indigent residents. Opponents to the issue challenged the validity of the bond election in a mandamus action before this court. (*San Francisco* v. *Collins* (1932) 216 Cal. 187 [13 P.2d 912].) We upheld the election. Quoting the provisions of the Pauper Act, we observed that it imposed a mandatory duty on the county. We then stated "[T]here can be no question as to the applicability of . . . the second statute, imposing a duty on the county or city and county, to the existing situation, where large numbers of persons have become *indigent through unemployment.* The statutes are neither in terms nor spirit limited to the relief of chronic or permanent paupers, or any other class of poor persons, but extend to every person coming within the terms of the statute dependent upon public assistance for the necessities of life." (216 Cal. at p. 190.) (Italics added.)

In 1933 the Legislature repealed the Pauper Act and enacted a new provision, which required aid to "all able-bodied indigent persons and those indigents incapacitated by age, disease or accident. . . ." (Stats. 1933, ch. 761, p. 2005) Then in 1937 the Legislature set out to enact a Welfare and Institutions Code, including all welfare laws, and the Assembly committee recommended incorporation of the language of the 1933 act.[10] The Senate,

---

[9]"[I]n construing a remedial statute, like a law concerning the rendition of charitable aid to indigents . . . reason must have its just proportion, and in interpreting the expressions employed, the court is free to study the history and purpose of the enactment and the previous state of the legislation on the subject, as well as other statutes *in pari materia* and the benefits sought to be provided." (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526].)

[10]See Assembly Journal (52 Sess. 1937) pages 3298-3301.

however, refused, and passed a bill explicitly excluding employable persons, and limited aid to those "unemployable unemployed indigents incapacitated by age, disease or accident."[11] The Assembly in turn rejected the Senate version, and on recommendation of the conference committee both houses agreed to, and enacted, the language of present section 17000.

The effect of the 1937 legislation was to delete the phrase "able-bodied indigents" in the 1933 act; respondents contend that this omission evidences a legislative intent to deny assistance to able-bodied, and thus employable, persons. Petitioner in turn argues that the refusal of the Legislature to enact the Senate proposal excluding employable persons shows a legislative intent that employable persons receive aid. ■ Contrary to the suggestions of both petitioner and respondents, we cannot derive the legislative purpose of section 17000 from actions of one house of the Legislature which were rejected by the other house. Instead, we must look to the compromise language concurred in by both Senate and Assembly. That language, as we have observed, was virtually identical to the 1931 act, which had been authoritatively construed in *San Francisco* v. *Collins, supra,* to permit aid to persons whose unemployment derives not from personal disability but from general economic depression.

Thus when a case reached this court under the 1937 act, we cited *San Francisco* v. *Collins* and declared that "It is made the duty of every county in this state to 'relieve and support' *all indigent persons* lawfully resident therein, 'when such persons are not supported and relieved by their relatives' or by some other means. . . . The obligation imposed by this statute is a mandatory duty." (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526].) (Italics added.) In *Bd. of Soc. Welfare* v. *County of L. A.* (1945) 27 Cal.2d 81, 85 [162 P.2d 630] we again relied on *San Francisco* v. *Collins* for the proposition that "It was the mandatory duty of the county to furnish aid according to the plan therefor which is laid down by the applicable provisions of the Welfare and Institutions Code."

Respondents contend, however, that under Welfare and Institutions Code section 17001 the county may establish standards of eligibility for General Assistance, and that the employable single man rule falls within the discretionary authority conferred by that section. Section 17001 states that "The board of supervisors of each county, or the agency authorized by county charter, shall adopt standards of aid and care for the indigent and dependent poor of the county or city and county. . . ." ■ We have interpreted this provision to confer upon the county a broad discretion "to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief." (*County of L. A.* v. *Dept. of Social Welfare*

---

[11] See Senate Journal (52d Sess. 1937) page 3084.

(1953) 41 Cal.2d 455, 458 [260 P.2d 41]; accord, *Patten* v. *County of San Diego* (1951) 106 Cal.App.2d 467, 470 [235 P.2d 217].)

This discretion, however, can be exercised only within fixed boundaries. ■ In administering General Assistance relief the county acts as an agent of the state. (*San Francisco* v. *Collins* (1932) 216 Cal. 187, 192 [13 P.2d 912].) ■ When a statute confers upon a state agency the authority to adopt regulations to implement, interpret, make specific or otherwise carry out its provisions, the agency's regulations must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose. (Gov. Code, § 11374.) Thus California courts have on at least three occasions found it necessary to invalidate welfare regulations as inconsistent with state statute. (*Bila* v. *Young* (1942) 20 Cal.2d 865, 867 [129 P.2d 364]; *Rosas* v. *Montgomery* (1970) 10 Cal.App.3d 77, 92 [88 Cal.Rptr. 907]; *Daley* v. *State Dept. of Social Welfare* (1969) 276 Cal.App. 2d 801, 805 [81 Cal.Rptr. 318].)

The most recent of these cases, *Rosas* v. *Montgomery,* presents a close analogy to the present case. The Department of Social Welfare issued regulations excluding alcoholics from the "Aid to the Needy Disabled" program. (Welf. & Inst. Code, § 13500 et seq.). Since the regulation did not define the extent of disability required for aid, but instead denied assistance to a class of persons, some of whom were clearly and admittedy totally disabled from employment, the court found the regulation invalid.

We observe also the recent decision of a three-judge federal district court in *Remillard* v. *Carleson* (N.D. Cal. 1971) 325 F.Supp. 1272, which held invalid a welfare regulation excluding families of fathers in military service from the federal aid to needy families program. Again the objectionable feature of the regulation was found in its exclusion of an entire class of persons, some of whom would be eligible for aid if their applications were considered on their individual merits.

In the present case, the county conceded on oral argument that it may not adopt regulations that arbitrarily exclude a class from eligibility for General Assistance and that its standards of eligibility must carry out the objectives of the enabling legislation. It contended, however, that in determining an applicant's eligibility it may take into account all his economic resources, and that "employability" was just such an economic resource. The term "employability," however, is used by the county to denote merely that a man is physically and mentally fit for work; it does not signify that a

job awaits him.[12] Even in time of full employment a person may be physically and mentally fit, but lack necessary skills to obtain a job; in periods, such as the present, of substantial unemployment, even the skilled and experienced worker may be unable to obtain work. To the man who cannot obtain employment his theoretical employability is a barren resource; it is inedible; it provides neither shelter nor any other necessity of life. Until he can get a job, he does not differ in economic resources from the man whose unemployment stems from more personal disabilities.[13] (See opinion of Legislative Counsel of California, Public Assistance No. 1913, Feb. 24, 1971.)

Finally, respondents contend that the county simply cannot afford to extend General Assistance to employable persons; they present an estimate that abolition of the employable single man rule would approximately double the cost of General Assistance. We are aware of the financial difficulties which attend present welfare programs on local, state, and national levels. This court, however, is not fitted to write a new welfare law for the State of California, and while the Legislature addresses itself to that task it remains our task to enforce the existing law. We observe that the county retains extensive authority to establish standards for General Assistance, both as to eligibility and as to amount of aid. In view of this discretion, the county can surely find many ways which do not violate state statute in which it can limit General Assistance payments to the financial resources available.

In summary, county General Assistance was the original, and for many years the only, program of indigent relief; it was not limited to unemployable persons and was used, with judicial approval, for the support of the economically unemployed during the depression. Since that date, many

[12]Regulation GA-010 states that "Employability must be determined through a medical and/or psychological examination of the client." Regulation GA-08 requires employable applicants to "verify their efforts to find employment as a condition of receiving aid," thus implying that an applicant is deemed employable although his best efforts do not succeed in finding employment. In the present case the County denied aid to petitioner because he was "able to work"; the notice asserted that "According to San Mateo County regulations, only persons with a medically verifiable incapacity, physical or emotional, are eligible for General Assistance."

[13]The county refers us to the language in *County of L. A.* v. *Dept. of Social Welfare* (1953) 41 Cal.2d 455, 458 [260 P.2d 41], where we stated that "The administration of county relief to indigents, as distinguished from old age security and needy blind assistance, is vested exclusively in the county supervisors who have discretion, without supervision by the state, to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief." The reference in this language to the lack of state supervision refers to the holding in that case that the counties, in administering General Assistance, are not required to obey the orders of the California State Department of Social Welfare. There is, however, no question but that the counties must conform to the provisions of state statutes.

specialized relief programs have been enacted, including unemployment compensation. General Assistance, however, remains the residual fund by which indigents who cannot qualify for and under any specialized aid programs can still obtain the means of life. A rule excluding from its scope all unmarried employable persons, without regard for the practical impossibility of obtaining employment in a depressed labor market, leaves such individuals without any source of relief whatsoever—a result inconsistent with the language and purpose of section 17000 and other statutes establishing General Assistance relief.

▮ As we stated in *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]: "While the construction of a statute by officials charged with its administration, including their interpretation of the authority invested in them to implement and carry out its provisions, is entitled to great weight, nevertheless 'Whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts.' (*Whitcomb Hotel* v. *California Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405] . . .) Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to. strike down such regulations."

### 4. *Exhaustion of administrative remedies.*

Respondents contend that petitioner has not pled that he requested emergency relief under regulation GA-08, and thus has failed to exhaust his available administrative remedies. This regulation states that "in those cases in which the welfare of children is threatened or where there is illness in the family, emergency aid may be given . . . ." This language raises a substantial doubt whether petitioner, a healthy, unmarried adult, could possibly qualify for emergency aid under that regulation.

Even if we assume, however, that emergency assistance may have been available to petitioner, respondents' argument fails. ▮ The county maintains no separate program of emergency aid, and no separate procedure by which one applies for that aid. "Emergency" is simply a factor used to determine an applicant's eligibility for regular county General Assistance. Thus when petitioner applied for aid, the county assumed the duty of determining his eligibility, including the ascertainment of the fact of any emergency if such fact would affect eligibility.[14] The county's denial of

---

[14] The county provides persons seeking General Assistance with a single form, number GA 200/1, which is entitled "Application for General Assistance." The application is referred to the appropriate division of the department of public health and welfare; regulation GA-03 provides that "The Family and Children's Section

General Assistance to petitioner therefore represents a determination that petitioner's circumstances did not constitute an emergency such as to render him eligible for aid. Once the county reached that determination, petitioner could pursue no further administrative remedy.

5. *Issues of fact concerning petitioner's eligibility and standing.*

Respondents contend that, apart from the issue of employability, petitioner is ineligible for General Assistance because he is not indigent, and has not diligently sought employment;[15] on the same grounds, they assert that he lacks standing to maintain a class action attacking the employable single man rule. These contentions directly contradict the stipulations entered into by the parties in the superior court action, in which the county agreed that "on the information available to respondents, petitioner would be eligible for General Assistance but for the fact that he is employable." Respondents now assert that, since the present matter is not an appeal from the superior court but an original proceeding in mandamus, those stipulations of fact are not binding here; they repudiate the stipulations and decline to enter into any such stipulations before this court.

Respondents have requested a factual hearing pursuant to Code of Civil

---

is responsible for the determination of eligibility and authorizing the grant in all family cases. . . . All adult cases including families consisting of adults alone are carried by the adult section." Regulation GA-011 requires that "In all cases, the employability of the applicant shall be determined and his work history carefully explored at the time of application." Finally, regulation GA-203.1 places upon the social worker assigned to the case the responsibility "to carefully evaluate the current needs of the applicant or recipient."

In sum, the county does not expect a welfare applicant to be conversant with county standards and regulations, nor require him to cite the basis for his eligibility on his application for benefits. Instead, the county itself takes on the role of inquiring into the relevant facts and determining whether, on those facts, the applicant is eligible for any form or amount of General Assistance.

[15]Respondents contend that petitioner is a member of "a subculture composed of individuals who have rejected the work ethic" and that petitioner is not seriously seeking employment and has adopted a life style that would hinder his obtaining employment. They further assert that they attempted to subpoena petitioner at the superior court hearing in order to prove this contention, but were unable to serve the subpoena; they do not, however, explain why they then stipulated at that hearing that *"On the information available to respondents,* petitioner would be eligible for General Assistance but for the fact that he is employable." (Italics added.)

Respondents further contend that petitioner is not indigent in that he has received free housing from a friend from September to December of 1970. We observe, however, that petitioner was denied General Assistance in September, and must find some place to live pending his appeal and the bringing of this writ. As we stated in *Bd. of Soc. Welfare v. County of L. A.* (1945) 27 Cal.2d 81, 86 [162 P.2d 630]: "The bare fact that an applicant has by one means or another managed to ward off starvation pending receipt of the payments to which he was previously entitled provides no sufficient excuse for a county to refuse to make such payments."

Procedure section 1090 to determine issues of petitioner's indigency and efforts to obtain employment. Such a hearing is inappropriate for several reasons. First, section 1090 provides for a trial by jury, a provision "singularly inappropriate for appellate courts." (3 Witkin, Cal. Procedure (1954) p. 2560.) Second, we granted mandamus in order to provide not only petitioner, but all persons similarly situated, with a speedier determination of this issue of major public importance than the normal process of appeal; the delay necessitated by a factual hearing would frustrate that objective. Finally, respondents have had an opportunity for a factual hearing in the superior court. Although presenting documentary evidence, they freely chose not to present testimony of witnesses, but instead entered into the stipulations quoted earlier.

When we granted the petition for hearing and issued the alternative writ in this case, we did so under the assumption that respondents would not enter into stipulations of fact unless they believed the facts so stipulated to be true. Respondents did not oppose issuance of the alternative writ either here or in the Court of Appeal,[16] and it was not until after the alternative writ issued that they repudiated the stipulations.

We are confronted here with the legal issue of whether the employable single man who cannot find employment is entitled to relief or is to be left to his own devices to avoid starvation. This issue has been fully briefed and argued before us; to fail to decide it now would serve no purpose but to incur delay since we shall confront that issue again when petitioner's appeal reaches this court, and in that proceeding respondents cannot escape the binding effect of their stipulations. The legal issue here transcends the facts of this particular indigent's case; we should not be deterred from deciding the vital issue of law by respondents' very belated efforts to raise factual disputes concerning his eligibility. As we set forth later petitioner's own eligibility will be determined in the appropriate manner.

### 7. Conclusion.

Petitioner has requested that we mandate respondents to grant him General Assistance notwithstanding the fact of his employability. Since respondents have raised factual questions concerning petitioner's eligibility for General Assistance, and the stipulations referred to above resolving those issues are not technically binding in the present proceeding, we cannot grant petitioner the relief he requests. We can, however, issue mandamus directing the county not to deny General Assistance solely on the ground

---

[16]Code of Civil Procedure section 1107 and California Rules of Court, rule 56 permit the filing of an answer opposing the issuance of an alternative writ of mandamus.

of employability.[17] The eligibility of petitioner, and other members of the class he represents, for General Assistance, then may be determined by respondents through the normal administrative processes or, alternatively, in the case of petitioner, by a final judgment on his appeal. Any peculiar problems that may arise concerning petitioner's income, support, and efforts to get employment will not delay relief to other persons who may have been unlawfully denied General Assistance on the ground of employability.

Let a peremptory writ of mandate issue directing respondents not to deny General Assistance support to petitioner, or others similarly situated, on the sole and exclusive ground that such applicant is employable.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

On May 27, 1971, the opinion was modified to read as printed above.

---

[17]Counsel have furnished us with an opinion of the Legislative Counsel of California, in a matter entitled Public Assistance—#1913, rendered February 24, 1971. The opinion advises that "a county may not deny county general relief to an *otherwise eligible* indigent who is capable of being employed, but may as a condition of granting aid require an employable welfare recipient to register for and accept reasonable employment or perform other work authorized by the county." (Italics in original.)