Filed 5/24/13  P. v. Cefalu CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SALVATORE JOHN CEFALU,<br><br>    Defendant and Appellant. | H037736<br>(Santa Clara County<br>Super. Ct. No. 211284) |

Salvatore John Cefalu appeals from an order committing him for an indeterminate term to the custody of the Department of Mental Health (DMH) after a court trial wherein he was found to be a "sexually violent predator" (SVP) within the meaning of the Sexually Violent Predator Act (SVPA) (Welf. & Inst. Code, § 6600 et seq.).[1]  He claims the denial of his motion to dismiss the petition was reversible error requiring his immediate release, because both the 2007 and 2009 protocols used by the evaluators were invalid.  He relies on *In re Ronje* (2009) 179 Cal.App.4th 509 (*Ronje*) to challenge the evaluators' use of the 2007 protocol as an "underground" regulation.  He also asserts that the 2009 protocol is invalid because it is not a "standardized assessment protocol" within the meaning of section 6601, subdivision (c).  Defendant contends that the use of those protocols violated his statutory and constitutional rights, and deprived the trial court of

---

[1]     Further statutory references are to the Welfare and Institutions Code unless otherwise noted.

fundamental jurisdiction. For reasons explained below, we find both of defendant's challenges to the 2007 and 2009 protocols lack merit.

Defendant also challenges the constitutionality of the SVPA on equal protection, due process, ex post facto, and double jeopardy grounds. We conclude that those claims are foreclosed by *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*). Further, based on the reasoning of *People v. McKee* (2012) 207 Cal.App.4th 1325 (*McKee II*) (review den. Oct. 10, 2012, S204503), we find no constitutional infirmity in the SVPA's provisions for indeterminate commitments. We will therefore affirm the trial court's commitment order.

## I. The SVP Commitment Process

Under the SVPA, an individual determined to be an SVP may be civilly committed to DMH for treatment and confinement for an indeterminate term. (§ 6604.) In order to classify a person as an SVP, it must be shown beyond a reasonable doubt that (1) the person has been convicted of a sexually violent offense against one or more victims; (2) the person has a diagnosed mental disorder; and (3) the person's mental diagnosis makes the person likely to engage in sexually violent criminal behavior. (§ 6600, subd. (a)(1).)

Section 6601, subdivision (c), requires DMH to develop and update a "standardized assessment protocol" for evaluating potential SVP's. The protocol "shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders." (§ 6601, subd. (c).) Only after two independent mental health professionals agree under the protocol that a person meets SVP criteria does DMH request the filing of a petition for involuntary commitment. (§ 6601, subds. (c)-(f), (h).)

"The purpose of this evaluation is not to identify SVP's but, rather, to screen out those who are not SVP's. 'The Legislature has imposed procedural safeguards to prevent meritless petitions from reaching trial. "[T]he requirement for evaluations is not one

affecting disposition of the merits; rather, it is a collateral procedural condition plainly designed to ensure that SVP proceedings are initiated only when there is a substantial factual basis for doing so." ' [Citation.]  The legal determination that a particular person is an SVP is made during the subsequent judicial proceedings, rather than during the screening process.  [Citation.]" (*People v. Medina* (2009) 171 Cal.App.4th 805, 814 (*Medina*).)  Those proceedings include a probable cause hearing (§ 6602) and a trial (§§ 6603, 6604).

At the probable cause hearing, the People must show that the alleged SVP is likely to engage in sexually violent predatory criminal behavior.  (*People v. Superior Court* (*Preciado*) (2001) 87 Cal.App.4th 1122, 1130.)  After such a showing, the matter may proceed to trial, where the People have the burden of proving beyond a reasonable doubt that the person meets all SVP criteria.  (§§ 6603, 6604.)  If the person is found at trial to be an SVP, he or she is involuntarily committed to DMH for treatment and confinement for an indeterminate term.  (§ 6604.)

We note that the SVPA was twice amended in 2006, first by Senate Bill No. 1128 (Stats. 2006, ch. 337, § 55), and then by Proposition 83 (see Cal. Const., art. II, § 10, subd. (a)).  Before those amendments, an individual determined to be an SVP was committed to DMH for a two-year term, which could be extended for additional two-year periods.  (Former § 6604, as amended by Stats. 2000, ch. 420, § 3; former § 6604.1, as amended by Stats. 2000, ch. 420, § 4.)  With the 2006 amendments, the SVPA now provides for an indeterminate commitment.  (Stats. 2006, ch. 337, § 55; § 6604; see Cal. Const., art. II, § 10, subd. (a).)

## II. Procedural History

Because defendant does not challenge the sufficiency of the evidence supporting the trial court's commitment order, we do not discuss in detail defendant's criminal history of qualifying sex offenses.  We focus on the petition to commit defendant as an SVP filed by the Santa Clara County District Attorney on April 30, 2008.  The petition

was supported by evaluations from Drs. Karlsson and Cassidy on behalf of DMH, as required by section 6601. Both doctors, licensed and practicing psychologists, met with defendant in person and reviewed all available records pertaining to defendant's criminal and psychiatric history. The commitment petition alleged defendant was convicted of three qualifying sex offenses identified in section 6600, one in 1981 and two in 1983. The petition also alleged that defendant has a diagnosed mental disorder, which makes him a danger to the health and safety of others in that he is likely to engage in acts of predatory sexual violence without appropriate treatment and custody.

Dr. Karlsson's first evaluation under section 6601 was prepared on April 4, 2008; Dr. Cassidy's first evaluation, also under section 6601, was prepared on April 16, 2008. Both used DMH's 2007 protocol. A probable cause hearing was held on May 9, May 14, July 15, and July 16, 2008. At the conclusion of that hearing, the court found probable cause to believe that defendant met SVP criteria within the meaning of section 6600.

On January 19, 2010, defendant filed a motion for new section 6601 evaluations and a new probable cause hearing based on the decision in *Ronje*, *supra*, 179 Cal.App.4th 509. Also based on *Ronje*, the People had requested updated evaluations from DMH pursuant to section 6603, subdivision (c)(1), and Drs. Karlsson and Cassidy completed the updated evaluations on April 30, 2009 and May 5, 2009, respectively. On January 21, 2010, the court granted defendant's motion for a new probable cause hearing and denied defendant's motion for new section 6601 evaluations, without prejudice to renew the request after the new probable cause hearing.

Before the new probable cause hearing took place, defendant filed a motion to dismiss on the grounds that the updated evaluations, which were prepared under DMH's 2009 protocol, were invalid because the 2009 protocol is not a "standardized assessment protocol" as called for in section 6601, subdivision (c). Defendant's motion was supported by declarations from Drs. Wollert and Halon, both licensed psychologists. Dr.

Wollert opined that DMH's 2009 protocol is not a "standardized assessment protocol, as that term is understood in the scientific and psychological community."

The People argued in opposition that (1) the 2009 protocol is a "standardized assessment protocol" within the meaning of section 6601, subdivision (c); (2) even if the 2009 protocol is not a "standardized assessment protocol," defendant's constitutional right to due process is not violated by the use of the 2009 protocol; and (3) even if the court were to find in favor of defendant, the proper remedy would be to order new section 6601, subdivision (c) evaluations and a new probable cause hearing, not to dismiss the petition. The People also filed the declaration of Dr. Phenix, a licensed psychologist who, according to her declaration, "was tasked with developing the first Standardized Assessment Protocol and provided the DMH with six updated versions as the science of risk assessment evolved and the protocol required updating." In discussing the meaning of the term "standardized assessment protocol" relative to DMH's 2009 protocol, Dr. Phenix declared that "a 'one size fits all' protocol would miss the psychological complexities of each individual evaluated."

Using DMH's 2009 protocol, both Drs. Karlsson and Cassidy reevaluated defendant for trial, pursuant to section 6603. Dr. Karlsson's report was completed on April 18, 2010, and Dr. Cassidy's report was completed on May 29, 2010. The new probable cause hearing, ordered as a result of defendant's *Ronje* motion, was held on June 22, July 1, and July 7, 2010. At the conclusion of evidence, the court allowed defendant time to renew his motion for new section 6601 evaluations under *Ronje*, *supra*, 179 Cal.App.4th 509.

During that time, the court conducted a hearing on defendant's motion to dismiss on July 9, 2010. Both parties agreed the court could consider DMH's 2009 protocol and the declarations of Drs. Wollert, Halon, and Phenix as evidence. In its July 15, 2010, ruling on the motion to dismiss, the trial court found "the 2009 protocol comports with the intention of the [L]egislature and comports with the accepted definition of the words,

standardized assessment protocol. The 2009 protocol recognizes that individuals differ in psychological functioning, issues of mental health and level of risk for sexual reoffense. . . . [¶] . . . Therefore, the Court rules that the 2009 Standardized Assessment Protocol meets the requirements of the statute, is valid, and therefore [defendant has not] suffered any due process violation." After denial of the motion to dismiss, defendant sought and was denied writ relief from this court. (*Cefalu v. Superior Court* (*The People*) (Aug. 18, 2010) H035870 [nonpub.].) The California Supreme Court denied defendant's associated petition for review. (*Cefalu v. Superior Court* (*The People*) review denied Oct. 27, 2010, S185791.)

On August 17, 2010, the trial court denied the motion for new section 6601 evaluations and found probable cause to hold defendant over for trial on his SVP status. Defendant waived jury and waived his appearance for trial, which was held on December 5, 7, and 8, 2011. The trial court found true beyond a reasonable doubt that defendant was an SVP within the meaning of section 6600, and committed defendant to DMH for treatment and confinement for an indeterminate term. The December 8, 2011, commitment order was made "subject to the ultimate decision" in *People v. McKee* (2010) 47 Cal.4th 1172. On December 12, 2011, defendant filed a timely notice of appeal.

### III.     Discussion

#### A.  Challenges to the 2007 and 2009 protocols

#### i.        Jurisdictional Challenge

Defendant argues that since he was never evaluated under a "valid" section 6601, subdivision (c) protocol, the trial court lacked fundamental jurisdiction to commit him as an SVP. Defendant contends that since "[t]he initial evaluations by both of the state's doctors were performed using the 2007 'underground' protocol and the updates, not new evaluations, were performed using the scientifically inadequate 2009 protocol," dismissal is required "because until an evaluation is conducted under a bona fide standardized

assessment protocol, there is no [jurisdictional] basis upon which to make a lawful involuntary commitment under the SVPA." He further argues that "[t]he same expert opinions which sprang from the 2007 unlawful protocol propelled the case through the judicial process."

"A lack of fundamental jurisdiction ' "means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.]' ([*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660].)" (*People v. Landau* (2013) 214 Cal.App.4th 1, 17 (*Landau*).) It has been determined, however, that any "failure to use properly enacted regulations in the initial evaluation of a suspected SVP does not result in a lack of fundamental jurisdiction, depriving the court of jurisdiction over the subject matter or appellant. ([*Ronje*, *supra*, 179 Cal.App.4th at p. 518]; [*Medina*, *supra*, 171 Cal.App.4th at pp. 815-817].)" (*Ibid.*) We follow these authorities and reject defendant's jurisdictional challenge.

### ii. Challenge to the 2007 Protocol

DMH published the Clinical Evaluator Handbook and Standardized Assessment Protocol (2007), the 2007 protocol, to evaluate persons who may be SVP's. (*Medina*, *supra*, 171 Cal.App.4th at p. 814.) In 2008, the Office of Administrative Law (OAL) concluded that certain provisions of the 2007 protocol met the definition of a "regulation" and should have been adopted pursuant to the Administrative Procedure Act (the APA) (Gov. Code, § 11340 et seq.). (2008 OAL Determination No. 19 (Aug. 15, 2008) p. 13.) While OAL determinations are not binding on this court, they are entitled to deference. (*Grier v. Kizer* (1990) 219 Cal.App.3d 422, 431, disapproved on another ground in *Tidewater Marine Western*, *Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 577.)

Regulations adopted in violation of the APA are termed "underground" (Cal. Code Regs., tit. 1, § 250) and may be declared invalid by a court. (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 333.) In *Ronje*, the court concluded that "[a]s an underground regulation, the 2007 standardized assessment protocol [was] invalid" and

its use constituted "an error or irregularity in the SVPA proceedings." (*Ronje*, *supra*, 179 Cal.App.4th at p. 517.) However, the *Ronje* court also found the error could be cured by a writ of habeas corpus directing the trial court to order new evaluations under a valid protocol and to conduct a new probable cause hearing based on those evaluations. (*Id.* at pp. 517-518, 520.)

Relying on *Ronje*, defendant argues that he, too, is entitled to new evaluations and a new probable cause hearing. But, because Ronje's challenge to the protocol was a pretrial one, Ronje was entitled to habeas corpus relief without a showing of prejudice. (*People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 (*Pompa-Ortiz*).) Here, defendant's challenge is presented posttrial; therefore, he must demonstrate that he was prejudiced at trial by the evaluators' use of the 2007 protocol. (*Ibid.*; *Ronje*, *supra*, 179 Cal.App.4th at p. 517.) "When a criminal defendant claims a procedural irregularity occurred prior to a determination of probable cause, the defendant must demonstrate prejudice to prevail on the issue in a postconviction setting unless the claimed error denied the court jurisdiction 'in the fundamental sense.' [Citation]. The same is true in SVP proceedings when it is claimed that an underground regulation was used in the prisoner's initial DMH evaluation. ([*Medina*, *supra*, 171 Cal.App.4th at pp. 818–819].)" (*Landau*, *supra*, 214 Cal.App.4th at p. 16.)

Defendant has made no showing of prejudice, nor can he. As the *Medina* court noted, the purpose of the evaluations is "to screen out those who are not SVP's." (*Medina*, *supra*, 171 Cal.App.4th at p. 814.) "The legal determination that a particular person is an SVP is made during the subsequent judicial proceedings." (*Ibid.*) Those proceedings include a probable cause hearing (§ 6602) and a trial (§§ 6603, 6604).

Here, the trial court found there was probable cause to believe that defendant met SVP criteria, and after a court trial defendant was found beyond a reasonable doubt to meet those criteria. Defendant has not challenged the sufficiency of the evidence. Nor has he shown that dismissal of the petition because the protocol was invalid would have

resulted in an abandonment of the commitment proceedings. He has not shown it reasonably probable that he would have been found not to be an SVP had he been evaluated under a different protocol. Defendant has not carried his burden to show prejudice. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105.) Therefore, reversal based on use of the 2007 protocol is not warranted.

### iii. Challenge to the 2009 Protocol

Defendant contends that the 2009 protocol is not a valid "standardized assessment protocol" within the meaning of section 6601, subdivision (c), because it fails to provide "any suggestion of direction or uniformity in the evaluation process."[2] Defendant argues that the 2009 protocol is not "standardized" since "each step in the evaluation process is left to the 'exercise of independent professional clinical judgment.' " He states that, unlike under the 2007 protocol, "the assessments by evaluators [under the 2009 protocol] are completely discretionary and can lead to unchecked abuse and arbitrary results."

The People maintain that although the 2009 protocol does not provide a step -by - step procedure for evaluators to follow,[3] it achieves standardization by "informing the

---

[2] The 2009 protocol is partly codified in the California Code of Regulations, title 9, section 4005. Section 4005 entitled "Evaluator Requirements" provides: "The evaluator, according to his or her professional judgment, shall apply tests or instruments along with other static and dynamic risk factors when making the assessment. Such tests, instruments and risk factors must have gained professional recognition or acceptance in the field of diagnosing, evaluating or treating sexual offenders and be appropriate to the particular patient and applied on a case-by-case basis. The term 'professional recognition or acceptance' as used in this section means that the test, instrument or risk factor has undergone peer review by a conference, committee or journal of a professional organization in the fields of psychology or psychiatry, including, but not limited to, the American Psychological Association, the American Psychiatric Association, and the Association for the Treatment of Sexual Abusers."

[3] The 2009 Standardized Assessment Protocol states in part: "This protocol cannot prescribe in detail how the clinician exercises his or her independent professional judgment in the course of performing SVP evaluations. Since the exercise of independent, professional clinical judgment is required, this evaluation protocol is not, (continued)

evaluators of the requirements of the law, the precise issue on which they are being asked to render an opinion, and risk factors they are required to consider.  It requires the use of tests, instruments, and unenumerated risk factors that have gained acceptance in the field of sex offender evaluation," and requires evaluators "to conform to peer-reviewed, professional norms."  The People also point out that defendant is not entitled to dismissal because he has not shown prejudice.  We agree.

"Where a statute empowers an administrative agency to adopt regulations, such regulations 'must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose.'  (*Mooney v. Pickett* (1971) 4 Cal.3d 669, 679; Gov. Code, § 11342.2.)  The task of the reviewing court in such a case 'is to decide whether the [agency] reasonably interpreted the legislative mandate.  [Citation.]' "  (*Woods v. Superior Court* (1981) 28 Cal.3d 668, 679; see Gov. Code, § 11342.2.)

"The court, not the agency, has 'final responsibility for the interpretation of the law' under which the regulation was issued.  [Citations.]"  (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11, fn. 4.)  When a court reviews an agency's interpretation of a statute, however, the court "accords great weight and respect to the administrative construction."  (*Id*. at p. 12.)  By adopting the 2009 protocol and section 4005 of the regulations pursuant to section 6601, DMH impliedly construed the statutory meaning of the term "standardized."  When "an agency has adopted an interpretative rule in accordance with Administrative Procedure Act provisions-which include procedures (e.g., notice to the public of the proposed rule and opportunity for public comment) that enhance the accuracy and reliability of the resulting administrative 'product'-that circumstance weighs in favor of judicial deference."  (*Id*. at p. 13.)

---

and cannot be, a detailed, precise step-by-step procedure like the kind of procedure that might apply to the chemical analysis of an unknown substance."

Defendant neither claims nor demonstrates that DMH failed to comply with the APA when it adopted section 4005. Defendant also offers no legislative history suggesting the Legislature intended any particular manner of standardization. Section 6601 does not expressly define "standardized," and it appears the Legislature left standardization to the expertise of DMH.

While defendant suggests that DMH's 2009 protocol is inconsistent with the California Supreme Court's decision in *People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, defendant does not explain how this is so. In *Ghilotti*, the court stated that "an evaluator's recommendation for or against commitment or recommitment is invalid if there appears a reasonable probability it was influenced by the evaluator's legal error." (*Id*. at p. 895.) "An evaluator's report is infected with legal error if, on its face, it reflects an inaccurate understanding of the statutory criteria governing the evaluation." (*Id.* at. p. 913.) *Ghilotti* requires that any legal error by the evaluator must also be material. "An evaluator's legal error shall be deemed material if, and only if, (1) there appears a reasonable probability, sufficient to undermine confidence in the outcome, that the error affected the evaluator's ultimate conclusion, and (2) a change in the evaluator's conclusion would either supply, or dissolve, the necessary concurrence of two designated evaluators." (*Id* at p. 913.) Defendant does not make any of these showings. Defendant does not argue or present evidence demonstrating a reasonable probability that the evaluations were influenced by any legal error committed by the evaluators.

Defendant asserts that the evaluators' use of the 2009 protocol violates both his substantive and procedural Constitutional right to due process under the 14th Amendment to the United States Constitution. Assuming, *arguendo*, that the 2009 protocol does not meet the requirements of section 6601, violations of state law do not necessarily amount to violations of the federal Constitution. "[The U.S. Supreme Court has] long recognized that a 'mere error of state law' is not a denial of due process. [Citation.] If the contrary were true, then 'every erroneous decision by a state court on state law would come [to

this Court] as a federal constitutional question.' [Citations.]" (*Engle v. Isaac* (1982) 456 U.S. 107, 121, fn. 21.) Defendant cites no authority applying federal due process protections to an alleged failure to adopt a "standardized assessment protocol" within the meaning of section 6601.

Even if defendant's evaluations under the 2009 protocol amounted to error for lack of standardization under section 6601, defendant fails to demonstrate that he was prejudiced by the error. As explained in *Ronje*, *supra*, 179 Cal.App.4th at pages 517-518, the *Pompa-Ortiz* rule, which applies to judicial review of irregularities in preliminary hearing procedures, also applies to judicial review of an evaluator's use of an invalid standardized assessment protocol in SVP proceedings. (*Pompa-Ortiz*, *supra*, 27 Cal.3d 519; see *People v. Hayes* (2006) 137 Cal.App.4th 34, 50-51 [*Pompa-Ortiz* rule applies to denial of substantive rights and technical irregularities in SVP proceedings].) Accordingly, since defendant's claim is presented posttrial, under *Pompa-Ortiz*, it "shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if [defendant] can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error." (*Pompa-Ortiz*, *supra*, at p. 529.)

The record does not establish a reasonable probability that defendant would not have been found to be an SVP had he been evaluated under an assessment protocol meeting defendant's definition of "standardized," and defendant has not challenged the sufficiency of the evidence supporting the finding that he is an SVP.

### B. Constitutional Challenges to Indeterminate SVP Commitment

Before the 2006 amendments to the SVPA, a person determined to be an SVP was committed to DMH for a period of two years. (Stats.1995, ch. 763, § 3, p. 5922; former §§ 6603, subd. (d), 6604.) The commitment could not be extended beyond two years unless a new petition was filed requesting a successive two-year commitment. (Former §§ 6604, 6604.1; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 243, fn. 5.) On the filing of a recommitment petition, a new jury trial would be conducted at which the

People would again have the burden to prove beyond a reasonable doubt that the person remained an SVP.  (Former §§ 6604, 6605, subds. (d), (e).)  (*McKee I*, *supra*, 47Cal.4th at p. 1185.)

The 2006 amendments to the SVPA changed the length of SVP commitments from two years to an indefinite term.  "An SVP can only be released conditionally or unconditionally if the DMH authorizes a petition for release and the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still meets the definition of an SVP, or if the individual, petitioning the court on his own, is able to bear the burden of proving by a preponderance of the evidence that he is no longer an SVP.  In other words, the method of petitioning the court for release and proving fitness to be released, which under the former Act had been the way an SVP could cut short his two-year commitment, now becomes the only means of being released from an indefinite commitment when the DMH does not support release."  (*McKee I*, *supra*, 47 Cal.4th at pp. 1187-1188.)

###### i.    *Equal Protection*

Relying on *McKee I*, defendant contends his indeterminate SVP commitment violates his federal constitutional right to equal protection because it treats SVP's significantly less favorably than individuals civilly committed under different statutory schemes.

In *McKee I*, the California Supreme Court found that SVP's, Mentally Disordered Offenders (MDO's), and defendants found not guilty by reason of insanity (NGI's) are similarly situated for purposes of an equal protection analysis of the length of their respective commitments.  (*McKee I*, *supra*, 47 Cal.4th at pp. 1203, 1207.)  Based on the liberty interests at stake, the *McKee I* court applied a strict scrutiny standard in its equal protection analysis.  (*Id.* at pp. 1207-1211.)  Finding that the People had not initially demonstrated a compelling state interest to justify differential treatment, the majority returned the case to the trial court to permit an evidentiary hearing on that issue.  (*Id.* at

pp. 1208-1211.) After a 21-day evidentiary hearing, the trial court found that SVP's present a substantially greater danger to society than do MDO's and NGI's. (*McKee II*, *supra*, 207 Cal.App.4th at p. 1330.)

On appeal in *McKee II*, the Fourth District Court of Appeal concluded that "the People on remand met their burden to present substantial evidence, including medical and scientific evidence, justifying the amended Act's disparate treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and placing on them the burden to prove they should be released). [Citation.] The People have shown that, 'notwithstanding the similarities between SVP's and MDO's [and NGI's], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society.' [Citation.] The People have shown 'that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] . . . that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children[;]' and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate that passed Proposition 83 that the disparate treatment of SVP's under the amended Act is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered. [Citation.]" (*McKee II*, *supra*, 207 Cal.App.4th at p. 1347.) The Supreme Court denied further review.

We find the reasoning and conclusion of *McKee II* persuasive. Defendant has not shown that he would be able to introduce new evidence to support a result different from that reached in *McKee II*. (See *Landau*, *supra*, 214 Cal.App.4th 1; *People v. McCloud* (2013) 213 Cal.App.4th 1076; *People v. McDonald* (2013) 214 Cal.App.4th 1367; *People v. McKnight* (2012) 212 Cal.App.4th 860, 863-864 ["It is plain that *McKee II* is not to be restricted to Mr. McKee alone or only to those SVP's convicted of crimes against children, like him, but rather its holding applies to the class of SVP's as a whole."].)

### ii.    Other Constitutional Challenges

To preserve federal review, defendant contends that indeterminate commitment under the SVPA, as amended in 2006, (1) violates due process placing the burden on him to show he no longer qualifies as an SVP; (2) is punitive in nature and violates the ex post facto clause by punishing him for crimes committed before its enactment; and (3) places him in double jeopardy because it constitutes additional punishment for the crimes for which he has already been punished.  He concedes that the California Supreme Court rejected similar claims in *McKee I*, and he acknowledges, as he must, that we are bound by the holding in *McKee I*.  (*McKee I*, *supra*, 47 Cal.4th at pp. 1193, 1195; *Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  Accordingly, we reject defendant's claims.

### iii.    Ineffective Assistance of Counsel

Defendant argues that if he is found to have forfeited constitutional challenges to his indeterminate commitment for failing to reassert objections below, then he was denied due process in his civil commitment proceeding due to ineffective assistance of counsel.  As the issue was raised in the alternative, and we have not found any forfeiture, we do not reach the issue of counsel's effectiveness.

### III.    Disposition

The December 8, 2011 commitment order is affirmed.

_____

                                                            Grover, J.

**WE CONCUR:**

_____

Premo, Acting, P.J.

_____

Mihara, J.