[Civ. No. 15295. Third Dist. May 7, 1976.]

JIMMIE ROGERS et al., Petitioners, v.
HOMER E. DETRICH, as Director, etc., et al., Respondents.

**COUNSEL**

Robert Burkholder, Theresa J. Player, J. Kendrick Kresse, Carmen Massey, Loren Mitchell and Susan Weiss for Petitioners.

John B. Heinrich, County Counsel, J. Steven Burris, Deputy County Counsel, John B. Clausen, County Counsel, Harlan Van Wye and Edward V. Lane, Deputy County Counsel, John H. Larson, County Counsel, David M. Ager, H. Anthony Nicklin, Deputy County Counsel, Thomas M. O'Connor, City Attorney, Kevin M. O'Donnell, Deputy City Attorney, Robert G. Berrey, County Counsel, R. Rudolf, Mary Gell and William Smith, Deputy County Counsel, for Respondents.

**OPINION**

**JANES, J.**—This mandamus petition is brought by and on behalf of applicants for and recipients of general assistance in the five counties whose welfare departments are headed by the named respondents, seeking review of the hereinafter described eligibility practices of such

departments which petitioners claim are violative of Welfare and Institutions Code section 11005.5.[1][2]

Welfare and Institutions Code section 11005.5 provides: "All money paid to a recipient or recipient group as aid is intended to help the recipient meet his individual needs or, in the case of a recipient group, the needs of the recipient group, and is not for the benefit of any other person. Aid granted under this part or Part A of Title XVI of the Social Security Act [42 U.S.C.A. §§ 1382-1382e] to a recipient or recipient group and the income or resources of such recipient or recipient group shall not be considered in determining eligibility for or the amount of aid of any other recipient or recipient group."

In general terms, petitioners contend section 11005.5 is violated by the practices of respondents which view as income or resources of the party seeking county-funded and county-administered general assistance, aid paid to certain other persons in the form of a grant under the now federalized supplemental security program (42 U.S.C.A. §§ 1382-1382e), which program supersedes and consolidates the previous categorical adult aid programs which provided financial assistance to the blind (AB), aged (OAS), and the totally disabled (ATD).[3]

Specifically, petitioners assert that the practice of computing eligibility for the amount of general assistance that an applicant-recipient (sometimes hereinafter "applicant(s)") is entitled to receive under the county program by taking into account income and resources of certain classes of SSI/SSP (hereinafter "SSI") recipients affects four distinct subclasses of applicants. These are:

---

[1]All code references herein, unless otherwise specified, are to the Welfare and Institutions Code.

[2]Petitioners denominate this an action against a class of respondents, but nowhere in their petition seriously support the class defense theory.

[3]Prior to January 1, 1974, aid to eligible applicants in these categories was provided both by the state and by the federal government under the Social Security Act. The state and federal programs were separately administered, state administration being subject to federal law and partial federal reimbursement (§§ 10000-15205). Effective January 1, 1974, the respective programs were federalized pursuant to Title XVI of the Social Security Act (42 U.S.C.A. § 1382 et seq.). The present program, denominated Supplemental Security Income ("SSI"), established a national uniform support level for beneficiaries. Provision is made for additional state benefits, referred to as State Supplemental Payments ("SSP"), to be paid through federal administration if a state so elects. California has so elected (§§ 12200-12500) and recipients in this state receive aid in the form of a combined SSI/SSP grant, under the federally administered program.

1. Husbands and wives where one of them receives SSI and the other receives or applies for general assistance.

2. Parents who receive or have applied for general assistance and with whom reside children, adult or minor, who receive SSI.

3. Children who receive or have applied for general assistance and who reside with a parent or parents receiving SSI.

4. One who receives or has applied for general assistance and who resides with an unrelated SSI recipient.

### THE REGULATIONS

Section 17000 imposes upon each county the duty to provide for its incompetent, indigent, and incapacitated residents where such support is not otherwise furnished. Section 17001 provides for the adoption of "standards of aid and care for the indigent and dependent poor of the county . . ." It is alleged that prior to federalization of the categorical programs aiding the aged, blind and disabled, grants to recipients thereunder were not considered by the named county departments as income attributable to any other person(s). However, shortly after the SSI program became effective on January 1, 1974, the subject departments began adopting regulations which had that effect. The first such action was taken on June 1, 1974, by Resolution No. 74-575 of the Contra Costa County Board of Supervisors. This regulation is the broadest of those here involved, and affects members of all four previously enumerated classes of applicants, except that, as to the fourth subclass it applies only where the household consists of an adult male and an adult female.

San Diego County followed suit on June 19, 1974, with a departmental memorandum, incorporated into the County Relief Guide in August. The San Diego regulation applies only to subclass one, married persons residing together.

On August 15, 1974, Sacramento County revised its General Assistance Manual to include as income for eligibility purposes the SSI grant of the spouse with whom the applicant resides or of any person with whom the applicant has a "spouselike relationship," i.e., subclasses one and four.[4]

---

[4] In the joint opposition submitted by respondents, it is stated that this practice went into effect on July 1, 1974.

By departmental memorandum under date of December 2, 1974, San Francisco assumed a position analogous to the above three counties but also distinguishable where the general assistance ("GA") applicant is already receiving GA, in that the SSI grant itself is not treated as joint income but all other income of the members of the recipient's household is so attributed. As to new applicants for GA, the SSI of other members of the household is viewed as income. The memorandum requires the inclusion of the SSI of a household member in every case, but in practice the discrepant policy is apparent.

The Los Angeles County position is not clearly embodied in a new or amended regulation, but has resulted from application of a new policy to an existing regulation, a practice which is alleged to have commenced on or before January 24, 1975. County Assistance Regulation section 40-101.214 provides that a recipient must apply for any governmental assistance for which he is eligible. The manner in which the regulation, as affected by the new policy, is said to violate section 11005.5 occurs in the following context: Applicant received aid for him/herself and a disabled child under the Aid to Families with Dependent Children program ("AFDC"), then applied for and was granted SSI in behalf of the disabled child. The child, now receiving SSI, is no longer dependent within the rules of the AFDC program and aid to the parent is no longer available under that program. The parent then applies for GA and is denied aid because under regulation section 40-101.214 he/she is deemed to have "chosen" not to seek the other assistance available —AFDC.

THE PETITIONERS

The individual petitioners are applicants for, or recipients of GA, and members of their families. Each of the applicants is a member of one of the first three categories of affected applicants and a resident of one of the five counties named, and has been denied GA or had his GA reduced because the SSI grant or other benefits of a family member with whom the applicant lives exceeded the income eligibility level for a family unit of that size. Each applicant asserts inability to work because of illness or disability. In most cases, petitioner applicants have applied for but have not yet been granted SSI benefits on the basis of their own status. No individual petitioners reside in Los Angeles County; applicants affected by the regulations of that county are represented herein by the Committee for the Rights of the Disabled ("CRD").

Petitioners Virginia and Jimmie Rogers, residing together in Contra Costa County, are mother and son. Virginia receives SSI. Jimmie, age 22, was denied GA solely because his mother's grant exceeds $160,[5] the county's standard for two people. His application for SSI was unsuccessful for unexplained reasons. As a consequence, Virginia's SSI grant is necessarily being used to support them both. Jimmie appealed unsuccessfully to the department. No further appeal has been taken.

Petitioners Stempfley, residing together in Contra Costa County, are husband and wife. Husband receives SSI and wife had been receiving a GA grant of $80. Her GA was terminated in April 1974 solely because husband's SSI grant exceeded the county's standard for two people. Wife's only income at present is a homemaker grant of $43 for her husband's care. Wife appealed to the department, and then to the board of supervisors, unsuccessfully.

Petitioners Loda Travnicek and Jackie Garaspe, also of Contra Costa County, are mother and daughter and formerly resided together. Jackie receives SSI. Loda's GA was terminated while she and Jackie resided together solely because Jackie's SSI grant of $158 exceeded the county standard for two people. Loda appealed unsuccessfully to the department and then to the board of supervisors. Because of the financial strain upon Jackie's household, Loda moved out to become eligible again for GA, which she now receives in the amount of $91.

Petitioners Christensen, residing together in Sacramento County, are husband and wife. Wife receives SSI of $235. Husband applied for GA in January 1975, and each month thereafter, being denied each time solely because of wife's SSI grant. Husband was advised by the department's employees that appeal would be futile and thus none was taken.

Petitioners Landry, residing together in San Francisco, are husband and wife. Wife received $112 SSI and $143 Social Security Disability Insurance Benefits ("SSDI") (see 42 U.S.C.A. § 401 et seq). Husband had been receiving $83 GA until January 1975, when aid was terminated solely because his wife's SSDI payment exceeded the county standard of $135 for a family of two. He appealed unsuccessfully to the department.

---

[5]All grant and aid figures herein are on a monthly basis.

Petitioners Marshall, residing together in San Francisco, are husband and wife. Wife receives $175 SSI and $79.50 SSDI. Husband had been receiving approximately $48 GA until January 1975 when his GA was terminated because of wife's SSDI. The local Legal Aid Society was able to secure partial reinstatement of husband's GA in the amount of $27.76 in April 1975. If it were not for attribution to husband of one-half of his wife's SSDI benefit, his GA would be $67.50.

Petitioner Perez, also of San Francisco, resides with his wife and fully disabled adult child. Prior to November 1974 the family received AFDC. At that time the child began receiving SSI of $235. The parents then applied for SSI and for GA. In April 1975, the mother was granted $235 SSI because of disability. Perez has not yet been accepted for SSI and was denied GA in December 1974 because of his son's SSI. Further application resulted in written denial on the same ground.

Petitioner Talomie lives in San Francisco with her disabled daughter, who receives $213 SSI. Mother's application for GA was denied because daughter's SSI exceeded the county standard for two. Appeal to the department failed.

The remaining individual petitioners, the Coans and the Newburys, are husbands and wives, residing together, respectively, in San Diego County. Both Mr. Coan and Mr. Newbury receive $235 SSI grants. Both Mrs. Coan and Mrs. Newbury had previously received GA. Mrs. Coan's aid, which had been $119, was terminated in August 1974 because her husband's SSI raised the family's income level above the county standard for two of $212. Mrs. Newbury's GA of $125 was terminated in February 1975 for the same reason.

Petitioner CRD asserts by way of the declaration of Miriam Gosling, a staff attorney for the Western Center on Law and Poverty in Los Angeles who represents local welfare recipients before the department, that a client of hers was denied GA because the client had had the option of receiving aid herself through the AFDC program, but by applying successfully for SSI for her disabled dependent child had "chosen" to refuse AFDC. This "refusal" to seek AFDC benefits is viewed by the department as a refusal to pursue an available relief resource which, within the meaning of county regulations, precludes a GA grant. Further, the child's SSI grant exceeds the county's standard for a family of two.

## THE LAW

Section 11005.5 (set forth in *haec verba,* p. 94, *ante*), has its origin in former section 3003, enacted in 1937, as amended in 1951 in response to litigation which culminated in the case of *County of L.A.* v. *Dept. of Social Welfare* (1953) 41 Cal.2d 455 [260 P.2d 41]. (Stats. 1951, ch. 1097, p. 2842; see also Cal. Const., former art. IV, § 22, now art. XVI, § 3.)

Section 3003, limited to the blind, provided in part after the 1951 amendment: "No person concerned with the administration of this chapter shall dictate how any applicant shall expend the aid granted to him. All money paid to a recipient under this chapter is intended to help him meet his individual needs and is not for the benefit of any other person. Aid granted under this chapter shall not be construed as income to any person other than the blind recipient."

In 1949, as is essentially still the case, California welfare programs fell into two groups. The categorical aid programs and the general assistance programs. The first group included the so-called adult aid programs and AFDC, programs administered by the county under the supervision of the state, in which the federal government defrayed a large portion of the costs. (*County of L. A.* v. *Dept. of Social Welfare, supra,* 41 Cal.2d 455.) The second group were and are funded and administered solely by the counties, although the county, in doing so, is at all times acting as an agent of the state. (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 678-679 [94 Cal.Rptr. 279, 483 P.2d 1231].)

The Los Angeles County Board of Supervisors, in 1949, adopted the policy that the grant of an aged or blind recipient would be considered as income in determining a spouse's eligibility for GA. Several affected applicants sought review before the State Social Welfare Board, but while their "appeals" were still pending the county filed an action in mandamus challenging the jurisdiction of the state agency to interfere in matters which were allegedly the sole concern of the county. The superior court denied the writ and the county appealed. While this appeal was pending (*County of Los Angeles* v. *Dept. of Social Welfare* (1952) 114 Cal.App.2d 827 [250 P.2d 716]), the state board completed its hearings and issued its order that the county immediately discontinue the practice of treating any part of grants to the aged and to the blind spouses of GA applicants as income available to such applicants. The state board made findings which provided, inter alia, that those grants were for the use of the aged or blind recipient alone.

The county then filed a second action in mandamus, this time to compel the state board to set aside its orders. The county prevailed in the trial court and the state board appealed. The appellate court affirmed [250 P.2d 710], but the Supreme Court granted a hearing. (*County of L.A. v. Dept. of Social Welfare, supra,* 41 Cal.2d 455.)

The Supreme Court held, as had the trial court and the appellate court, that the state board had no power over county administration of GA programs, and more importantly, that absent any statute to the contrary, a county was not precluded from viewing as family income the grant made to one of the spouses as aid to the blind or to the aged. (*Id.,* at pp. 458-459.) The court noted the passage of the statutory and constitutional amendments regarding the prohibition of such treatment of grants made as aid to the blind, and footnoted Los Angeles County's termination of the challenged practice, insofar as aid to a blind spouse was concerned, after the effective date of the amendments. (*Id.,* at P. 459.) Also pointed out by the court was the Legislature's failure to enact proposed legislation which would have added to the code, in regard to aid to the aged, language comparable to that of section 3003. (*Ibid.*)

In 1957, the Legislature enacted section 2017 which clothed aid paid to the aged with the same protection given aid paid to the blind by the 1951 amendment to section 3003. (Stats. 1957, ch. 260, p. 912.)

In 1963, both sections, 2017 and 3003, were superseded by section 439 which provided: "All money paid to a recipient or recipient group as aid is intended to help the recipient meet his individual needs or, in the case of a recipient group, the needs of the recipient group, and is not for the benefit of any other person. Aid granted shall not be construed as income to any person other than the recipient or, in the case of a recipient group, the recipient group." (Stats. 1963, ch. 43, p. 654.)

Section 439 was re-enacted in 1965 as section 11006. (Stats. 1965, ch. 1784, p. 3996.) In 1969 section 11006 was amended in a manner not here relevant. (Stats. 1969, ch. 1041, p. 2026.) 1973 legislation divided section 11006 into two sections; the portion with which we are here concerned was enacted as section 11005.5, which we again set out in full: "All money paid to a recipient or recipient group as aid is intended to help the recipient meet his individual needs or, in the case of a recipient group, the needs of the recipient group, and is not for the benefit of any other person. Aid granted under this part or Part A of Title XVI of the Social Security Act [42 U.S.C.A. §§ 1382-1382e] to a recipient or recipient

group and the income or resources of such recipient or recipient group shall not be considered in determining eligibility for or the amount of aid of any other recipient or recipient group." (Stats. 1973, ch. 1216, p. 2897.)

Analysis of the various amendments reviewed above reveals the Legislature's intent to insure that aid paid (1) is for the individual needs of its recipient, (2) is not for the benefit of any other person, and (3) shall not be viewed or treated as income available to any other person.[6] To treat one person's aid as a reason to deny eligibility or to reduce assistance to which another is entitled amounts to defiance of the legislative proscription.

Our construction of section 11005.5 is consistent with the recent case of *Cooper* v. *Swoap* (1974) 11 Cal.3d 856 [115 Cal.Rptr. 1, 524 P.2d 97]. The class plaintiffs in that action ultimately were successful in their challenge to the validity of a State Department of Social Welfare regulation, the application of which reduced AFDC grants where the recipients thereof shared housing with recipients of "adult aid" programs, i.e., aged, blind or disabled. One of the questions in *Cooper* was whether construing the noncash benefits which accrued from shared housing as income available to AFDC recipients violated section 11006. The court held that it did, stating: "Moreover, aside from the general impropriety of treating shared housing or similar benefits as 'income,' such characterization is clearly impermissible in the instant case by virtue of Welfare and Institutions Code section 11006. Section 11006 explicitly prohibits the imputation of any of an adult aid recipient's benefits as income to anyone else: 'Aid granted *shall not be construed as income* to any person other than the recipient.' (Italics added.) It seems clear that the Legislature, in establishing this prohibition, intended to protect the full grant mandated for other welfare recipients, such as the AFDC children involved in the instant case. Regulation 44-115.8, by in effect designating some portion of an adult aid recipient's housing benefits [fn. omitted] as 'income' to AFDC recipients residing in the same household, directly conflicts with this legislative mandate. Accordingly, on this basis alone, the regulation cannot stand." (*Cooper* v. *Swoap, supra,* 11 Cal.3d at pp. 869-870; see also *California Welfare Rights Organization* v. *Brian*

---

[6]Nothing in the statutory history of section 11005.5 discloses the reason for the 1973 inclusion of a recipient's "income or resources" as factors which "shall not be considered in determining eligibility for or the amount of aid of any other recipient or recipient group." Although the parties have not addressed themselves to the insertion of the language "income or resources," that portion of the statute is even more clear on its face than the remainder of the statute.

(1974) 11 Cal.3d 237 [113 Cal.Rptr. 154, 520 P.2d 970], the ultimate "shared housing" case.)

## RESPONDENTS' CONTENTIONS

Respondents initially challenged the exercise of our original jurisdiction, contending that there is no showing of urgency or of statewide public importance. Recognizing the similarity to recent California welfare litigation we issued our alternative writ but declined to grant temporary stays sought by petitioners. The answers and returns filed raise no significant dispute with respect to the factual presentation of petitioners.

Respondent directors make five contentions in addition to the jurisdictional challenge. They argue that this is not properly a class action in regard either to petitioners or to respondents; that the overwhelming economic burden that would result from granting the relief sought compels its denial; that there is a fatal nonjoinder of defendants (i.e., that the vital defendants are the members of the boards of supervisors of the affected counties); and that section 11005.5 is not violated by the practices of which petitioners complain. Further, they assert that retroactive relief would be inappropriate if petitioners prevail, and that the challenged practices, as regards spouses, is not only proper but in fact necessary to correct inequities created by the 1974 federalization of the respective programs. The Los Angeles director separately contends that no action lies against his county because (1) there are no individual resident petitioners, and (2) the Director of the State Department of Benefit Payments is an indispensable party.

Several of respondents' contentions may be disposed of summarily. The separate Los Angeles challenge is clearly meritless. The standing of welfare organizations to prosecute actions on behalf of recipients is well settled. Individual Los Angeles recipients need not be named as petitioners; participation of the Committee for the Rights of the Disabled and of its president, Warren Moss, is appropriate. (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 737 [97 Cal.Rptr. 385, 488 P.2d 953]; *California League of Senior Citizens, Inc.* v. *Brian* (1973) 35 Cal.App.3d 443, 448 [110 Cal.Rptr. 809].) Further, the State Department of Benefit Payments is not a necessary party to this action. The policy challenged here is not a state policy denying benefits to a parent and one disabled dependent child where the child loses its dependent status upon receiving SSI, but to a county policy which denies GA to such parent.

Similarly without merit is the San Diego contention that a husband and wife, or two persons living in a spouse-like relationship, must for all purposes be considered as a "recipient group," thereby permitting the SSI grant of one to be viewed as available to both. San Diego's position ignores the very real distinctions which exist between SSI grants to households consisting of an eligible individual with an eligible spouse and one in which an eligible individual resides with an ineligible spouse.[7]

■ The rule of stare decisis is a complete answer to San Diego's claim that petitioners' action must fail because of nonjoinder of all the state's counties. We are here called upon to construe an act of the Legislature; the final decision of an appellate court in the exercise of that function is binding throughout the state, (See *People* v. *Hallner* (1954) 43 Cal.2d 715, 720-721 [277 P.2d 393].)

*Class Action*

■ Respondents urge that this is not a proper class action, either as to petitioners or respondents. Our conclusion on the claim of nonjoinder of all counties disposes of the contention as to class respondents. We hold this a proper class action as to petitioners. While it is true that all petitioners do not rely on the same facts to establish the wrong to them, the wrong in each case is the same—the treating of another's SSI as income available to petitioners. Respondents' alleged wrongdoing varies only in regard to the choice of those SSI recipients whose aid is so construed, or conversely, those GA applicants who are viewed as having another's SSI available to them. The tests set forth in *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, at page 704 [63 Cal.Rptr. 724, 433 P.2d 732], are clearly met.

*Economic Burden*

■ Arguments regarding financial costs incident to the granting of judicial relief, where such relief is compelled by law, are properly addressed to the Legislature, not to the courts. (*Mooney* v. *Pickett, supra,* 4 Cal.3d 669, 680.)

---

[7]E.g., the SSI grant to an eligible individual with an eligible spouse, while not equal to that paid to two entirely unrelated eligible individuals, is significantly greater than that paid to an eligible individual with an ineligible spouse, in acknowledgment of the fact that, as to an eligible individual with an eligible spouse, the aid is paid on behalf of two persons.

*Nonjoinder of Boards of Supervisors*

■ Respondent directors contend they are not proper parties to this proceeding in that the boards of supervisors for their counties, rather than they, are the only persons enjoined by statute to provide aid to county indigents, and against whom mandamus will lie. (Code Civ. Proc., § 1085.) We reject the contention. The same statutory scheme which imposes the duty upon boards of supervisors provides for the establishment, by the boards, of a county department which "shall be the county agency for the administration of public social services . . ." (Welf. & Inst. Code, § 10800.) Each board is required to appoint a director for such department, who shall be subject to the general direction of the board of supervisors, unless otherwise provided by county charter.[8] (§ 10801.) "The county director shall, for and in behalf of the board of supervisors, have full charge of the county department and the responsibility of administering and enforcing the provisions of this code pertaining to public social services under the regulations of the department relating to aid and the regulations of the State Department of Health relating to services . . ." (§ 10802.) Significantly, section 10803, subdivision (c) mandates performance by the county directors of "such other duties as may be prescribed by law, and, . . . such other administrative and executive duties pertaining to the public social services as may, by other provisions of law, be imposed upon the board of supervisors."

The gravamen of this proceeding is the alleged violation by the named respondents of section 11005.5. The foregoing statutory provisions impose upon the county directors the obligation to comply with the requirements of section 11005.5 as well as all other related social service obligations imposed upon the boards of supervisors. In carrying out such directions the county directors act in a ministerial capacity, and thus any improper action or failure to act may be attacked by mandamus. (*May* v. *Board of Directors* (1949) 34 Cal.2d 125, 129, 133 [208 P.2d 661]; *People ex rel. Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193]; see also *Housing Authority* v. *City of L. A.* (1952) 38 Cal.2d 853, 870 [243 P.2d 515].)

*Violation of Section 11005.5*

■ It is evident from the foregoing analysis and discussion that petitioners are correct in their contention that the practices of which they

---

[8]We have reviewed the charters of the four charter counties; nothing therein is inconsistent with the general statutory scheme provided by the Legislature.

complain violate section 11005.5. The controversy between the parties centers upon the meaning of the word "aid" as that word is used in the second sentence of the statute. The second sentence reads in relevant part as follows: "Aid granted under this part or Part A of Title XVI of the Social Security Act [42 U.S.C.A. §§ 1382-1382e] to a recipient or recipient group . . . shall not be considered in determining eligibility for or the amount of aid of any other recipient or recipient group."

The parties are in accord that the phrase "aid granted under this part [or under U.S.C.A. §§ 1382-1382e]" describes the following programs: AFDC (§§ 11200-11507), SSI/SSP, and aid to the potentially self-supporting blind ("APSB," §§ 13000-13102). Respondents, in support of their position, interpret the word "aid," as used the *second* time in the above-quoted second sentence, as describing only AFDC, SSI/SSP and APSB. Petitioners, on the other hand, construe the term to include also general assistance (§ 17000 et seq.) as well as such other programs as Medi-Cal (§ 14000 et seq.) and food stamps. (§ 18900 et seq.)

Petitioners' construction finds support in section 10052 which furnishes the definition of the term "aid" as that term is used in division 9 of the Welfare and Institutions Code, relating to public social services. Section 10052 states: " 'Aid' means financial assistance provided to or in behalf of needy persons under the terms of this division, including direct money payments, vendor payments, and medical care." All of the programs which petitioners urge are encompassed by the word "aid" as used for the second time in the second sentence of section 11005.5 are authorized and administered under division 9.[9]

Under well settled rules of statutory construction, " 'relative or modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to more remote phrases.' " (*People* v. *Baker* (1968) 69 Cal.2d 44, 46 [69 Cal.Rptr. 595, 442 P.2d 675].) The only exception exists where " ' . . . the context or the evident meaning of the statute requires a different construction.' " (*Elbert, Ltd.* v. *Gross* (1953) 41 Cal.2d 322, 326-327 [260 P.2d 35].) It follows that only the first use of the word "aid" in the second sentence of section 11005.5 is qualified by the language "granted

[9]Respondents also argue that the definition contained in section 10052 is inapplicable because section 11005.5 is contained in part 3 ("Aid. and Medical Assistance," §§ 11000-15205) of division 9, rather than in part 1 ("Definitions and General Provisions," §§ 10000-10061) or part 2 ("Administration," §§ 10500-10965). The express language of section 10052 compels rejection of this argument.

under this part . . . ." The second, unmodified use of the word "aid" in that sentence must be understood to mean aid as that term is defined by section 10052. Any other interpretation is unreasonable, and a tortured construction of the words used.

*Retroactive Relief*

■ Finally, we reject respondents' contention that retroactive relief is not authorized by law. The question of the retroactivity of entitlement to GA was squarely in issue in the case of *Mooney* v. *Pickett,* 26 Cal.App.3d 431 [102 Cal.Rptr. 708]. The court, at pages 434-436, in reliance upon decisions of the Supreme Court, held that a county's obligation to provide relief pursuant to section 17000 "became a debt due from the county as of the date [the applicant] was first entitled thereto. By requiring such retroactive payments to be made by the county, the public policy of securing to those entitled to aid the full payment thereof, from the date they were first entitled thereto, regardless of errors and delays by local authorities, is promoted." (26 Cal.App.3d at p. 435.) We agree, and hold that petitioners are entitled to full retroactive relief.

Let a writ of mandate issue directing respondents to determine eligibility for general assistance and the amount of general assistance to which an applicant is entitled without reference to aid, income or resources of SSI/SSP recipients and further, to make such redeterminations and payments as are consistent with the views expressed herein.

Friedman, Acting P. J., concurred.

**PARAS, J.**—Because I disagree with the majority's interpretation of Welfare and Institutions Code section 11005.5, I dissent.

I

I begin my analysis, as does the majority, with a quotation from the pertinent sentence of the statute. "Aid granted under this part . . . to a recipient or recipient group . . . shall not be considered in determining eligibility for or the amount of aid of any other recipient or recipient group." It is unnecessary to go any further in search of meaning. The sentence juxtaposes "a recipient or recipient group" to "any *other* recipient or recipient group" and simply provides that aid to the former does not affect aid to the latter. Of what "aid" does the statute speak? Of "*aid granted under this part, etc.*" Why on earth would the statute relate

to any "aid" other than that which it has just expressly defined? I see very clearly that it defines "aid" by use of an immediately succeeding adjectival phrase the first time the word appears in the sentence; that was deemed enough. A second use of the same word invariably suggests that it is being given the same meaning as before (*Pitte* v. *Shipley* (1873) 46 Cal. 154, 160), and it is simply poor grammatical syntax to repeat the once-given definition. I rely upon this very natural reading of the sentence, whereas the majority gratuitously and inappropriately adds after the second use of the word "aid" the words "under division 9."

## II

A consideration which fully supports my interpretation arises from the fact that section 11005.5 is the successor to former section 11006. The change was made by the Legislature as a part of a substantial legislative package enacted on December 5, 1973 as urgency legislation (Stats. 1973, ch. 1216) to implement the federal Social Security amendments of 1972 (Pub.L. 92-603, 86 Stat. 1329 et seq.) and acquire for California the increased federal contribution to welfare expenditures. (See *Disabled & Blind Action Committee of Cal.* v. *Jenkins* (1974) 44 Cal.App.3d 74, 76-77 [118 Cal.Rptr. 536].)

Former section 11006 and present section 11005.5 both contain the following opening sentence: "All money paid to a recipient or recipient group as aid is intended to help the recipient meet his individual needs or, in the case of a recipient group, the needs of the recipient group, and is not for the benefit of any other person."

Former section 11006 followed with: "Aid granted shall not be construed as income to any person other than the recipient or, in the case of a recipient group, the recipient group." Section 11005.5 changed this to read: "Aid granted under this part or Part A of Title XVI of the Social Security Act to a recipient or recipient group and the income or resources of such recipient or recipient group shall not be considered in determining eligibility for or the amount of aid of any other recipient or recipient group." Why the change? Presumably in order to alter the statute's meaning. (*McDonough Power Equipment Co.* v. *Superior Court* (1972) 8 Cal.3d 527, 534, fn. 5 [105 Cal.Rptr. 330, 503 P.2d 1338], and cases there cited.) There are no limitations in the statute as it formerly read, and the majority would therefore necessarily agree that it then applied to all categories or types of "aid," as the word is defined in section 10052 (which was not changed in the 1973 emergency legislation).

Since the majority now holds that section 11005.5 still applies to all forms of aid, the same as it did when it was section 11006, the change was an idle act.

I don't believe it. The Legislature did not act idly; it intended by the change to restrict the meaning and effect of the statute to those types of aid which are included in part 3 ("this" part) of the Welfare and Institutions Code and Part A of Title XVI of the Social Security Act.

### III

There is yet further support for my interpretation of section 11005.5. Of the six "Parts" of division 9 ("Public Social Services"), parts 1 and 2 are procedural and of general application, part 3 deals with state funded financial benefits to welfare recipients (AFDC, SSP, APSB, etc.), part 4 deals with state institutional care for children and aged persons, part 5 deals with general assistance, and part 6 with miscellaneous state programs not involving payment of moneys to recipients. In part 5 only (§ 17000 et seq.), the Legislature has directed the counties to provide for the relief of indigents out of their own funds and has given broad control and discretion as to the amount and kind of relief to the boards of supervisors, limiting the state to general supervision only. Parts 3, 4, and 6 are all funded and substantively controlled by the state.

Having expressly given such broad discretion to the counties (see e.g., §§ 17001, 17107, 17111, 17200, etc.), and left it to them to supply the funds for general assistance, it is totally inconsistent with the legislative scheme for the state to interfere with such authority by prohibiting the attribution of income to general assistance recipients, under section 11005.5. This is a lefthanded way of doing it, to say the least. More logically, the Legislature intended in 1973 to make it clear that general assistance would not be controlled by the limitations of former section 11006; it effectively did so by the altered language of section 11005.5.

Finding no illegality or impropriety in the eligibility practices of the respondent welfare departments, I would deny the writ.

A petition for a rehearing was denied June 2, 1976, and the petitions of all the parties for a hearing by the Supreme Court were denied July 28, 1976. Clark, J., was of the opinion that the petitions should be granted.