[No. A126818. First Dist., Div. Two. Mar. 2, 2011.]

DAJOHN McCORMICK, a Minor, etc., et al., Plaintiffs and Appellants, v. COUNTY OF ALAMEDA et al., Defendants and Respondents.

**COUNSEL**

Western Center on Law and Poverty, Richard A. Rothschild, Abigail Coursolle, Antionette Deshun Dozier; East Bay Community Law Center and Luan Thi Kim Huynh for Plaintiffs and Appellants.

Richard E. Winnie, County Counsel, Jannie L. Wong and Victoria Wu, Deputy County Counsel, for Defendants and Respondents.

OPINION

KLINE, P. J.—This appeal is from the denial of a petition for writ of mandate challenging Alameda County's denial of general assistance to minor Dajohn McCormick on the basis that he qualified for and received benefits, although not cash aid, from the CalWORKs (California Work Opportunity and Responsibility to Kids) program. Appellants contend Dajohn was entitled to support from general assistance because his circumstances did not fall within any of the exceptions to the requirement that general assistance "relieve and support" all otherwise unsupported indigent residents and he was not "relieved and supported" by CalWORKs or any other program. We conclude Dajohn was improperly denied eligibility for general assistance and reverse.

## STATEMENT OF THE CASE AND FACTS

Prior to January 2008, Dajohn's mother, Drusilla Zeno, received a monthly cash grant of $398 for her son Derrick under the CalWORKs program. The CalWORKs household consisted of Zeno, Derrick (then 13 years old), and Dajohn (then seven years old). Dajohn was receiving food stamps and Medi-Cal but, under the statutorily defined maximum family grant (MFG) rule, was not entitled to cash aid because his family had been receiving aid for the 10 months prior to his birth.

When Derrick was removed from the household in January 2008, Zeno stopped receiving cash aid from CalWORKs. At this point, the family's only income was $870 per month which Zeno received from Supplemental Security Income (SSI) based on a permanent total disability, and $162 per month in food stamps. Zeno's monthly expenses for basic necessities were $1,229.

On February 19, 2008, Zeno submitted an application for general assistance (GA) for Dajohn. Her application was denied on May 14, 2008. She requested an administrative hearing. As the hearing officer summarized the testimony, "[t]he family often runs out of Food Stamps and cash. They often go hungry. She is unable to provide her son with school clothing and supplies. Most recently, she had to relocate from her home due to mold and mildew infestation. . . . [¶] . . . Ms. Zeno testified that her Eligibility Worker explained that if she gave up her child, then he would be eligible for cash benefits. She tearfully explained how she could never just give up her child because she cannot afford to care for him."

The hearing officer concluded the denial of GA was proper because Dajohn was considered a CalWORKs recipient even though he was not receiving a

CalWORKs grant. The hearing officer stated, "According to CalWORKS state regulations, an MFG child is still considered eligible and a recipient of CalWORKS. The only difference in the treatment of this Assistance Unit (AU) is that the maximum aid payment is not increased to correspond with the number of persons in the AU. Dajohn McCormick is included in the Minimum Basic Standard of Adequate Care (MBSAC). Furthermore, the agency must continue to carry an open CalWORKS case when the only AU member is MFG. Dajohn (MFG child) is a CalWORKS recipient and eligible for all related benefits, such as special needs and child care benefits." The hearing officer's decision was adopted by the county on July 22, 2008.

On October 20, 2008, Dajohn, through Zeno as his guardian ad litem, filed a petition for writ of mandate against Alameda County, the Alameda County Social Services Agency, and the agency's interim director, seeking reversal of the administrative decision (Code Civ. Proc., § 1094.5) and challenging the county's policy of denying GA to MFG children (Code Civ. Proc., § 1085). An amended petition filed on December 18, 2008, added petitioner Lifetime, a nonprofit California corporation that assists low-income parents in completing education and training programs, and clarified that the challenge was to denial of GA to MFG children who are members of assistance units in which no one receives cash aid from CalWORKs.

The matter was heard on July 22, 2009, and on August 3, 2009, the court filed its order denying the petition. The court agreed there was a "factual basis" for the assertion that Zeno's SSI income was insufficient to meet her and Dajohn's basic monthly needs. It found, however, that although Dajohn qualified for GA in every other way, he was precluded by Alameda County General Assistance Regulations former section 9-2-0.1, which provided that " '[a]n individual meets the age requirement for General Assistance eligibility if he or she is . . . a minor who lacks a source of basic care and support but does not qualify for any federal or state assistance program.' " The court held that the assistance contemplated by the regulation was not limited to cash aid and that Dajohn was ineligible for GA because he qualified for and received benefits, albeit not cash, from CalWORKs. It further found the GA regulation consistent with "the disincentive provision of the CalWorks program" that " 'punishes' children like [Dajohn], whose mother knowingly bore additional children without the monetary means with which to support them." Judgment was filed on September 2, 2009.

Appellants filed a timely notice of appeal on October 27, 2009.

## DISCUSSION

" ' "The standard of judicial review of agency interpretation of law is the *independent judgment* of the court, giving *deference* to the determination of

the agency *appropriate* to the circumstances of the agency action." [Citation.]' (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 8 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) '[T]he binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation.' (*Id.* at p. 7.)" (*Arenas v. San Diego County Bd. of Supervisors* (2001) 93 Cal.App.4th 210, 214–215 [112 Cal.Rptr.2d 845] (*Arenas*); see *Sneed v. Saenz* (2004) 120 Cal.App.4th 1220, 1235 [16 Cal.Rptr.3d 563].) We review the trial court's decision de novo. (*Sneed v. Saenz, supra*, 120 Cal.App.4th at pp. 1234–1235; *Arenas, supra*, 93 Cal.App.4th at p. 215.)

Dajohn was denied GA under Alameda County General Assistance Regulations former section 9-2-0.1, which, as worded at the time of these proceedings, provided that "[a]n individual meets the age requirement for General Assistance eligibility if he or she is . . . a minor who lacks a source of basic care and support but does not qualify for any federal or state assistance program."[1] Dajohn was considered to be receiving support from a state program, CalWORKs, although he was not receiving actual cash assistance due to the MFG rule.[2] Through CalWORKs, Dajohn was receiving food stamps and was eligible for Medi-Cal; according to implementation instructions provided to the counties when the MFG rule was adopted,[3] he was also eligible for special needs (such as temporary shelter payments and special diet expenses) and child care benefits, but there is no indication in the record that such benefits were applicable in this case.[4]

---

[1] The county regulations were revised and renumbered in 2009, but the present wording of the regulation at issue here does not differ in substance. Alameda County General Assistance Regulations section 9-3-4.1 now provides that an individual "meets the age requirement for GA if he or she is: [¶] . . . [¶] . . . [a] minor who lacks a source of basic care and support and does not qualify for . . . any federal or state assistance program."

[2] Zeno's SSI income could not be used as a basis for denying GA to Dajohn (Welf. & Inst. Code, § 11005.5; *Rogers v. Detrich* (1976) 58 Cal.App.3d 90, 101 [128 Cal.Rptr. 261]), and respondents make no suggestion that it should have been considered.

[3] State Department of Social Services All County Letter 97-29 provided the state regulations and implementation instructions for Welfare and Institutions Code section 11450.04 to the counties when the MFG rule was adopted in 1994. (<http://www.cdss.ca.gov/lettersnotices/entres/getinfo/acl97/97-29.PDF> [as of Mar. 2, 2011].)

[4] Appellants state that Dajohn is now eligible to receive CalWORKs cash aid because, under Welfare and Institutions Code section 11450.04, subdivision (d)(1), the MFG rule is applied for two years. Appellants maintain their claim is not moot both because Dajohn would be entitled to retroactive benefits (although they state he would "likely" not seek them) and because appellants seek to compel the county to change its policy.

Welfare and Institutions Code section 11450.04, subdivision (d)(1), provides, "This section shall not apply to any child to whom it would otherwise *apply if the family has not received aid for 24 consecutive months while the child was living with the family.*" (Italics added.) The reference to "aid" is necessarily to cash aid; if it included other forms of support, Dajohn's

Appellants contend GA cannot be denied to a person who merely "qualifies" for another assistance program; it can be denied only if that person's minimum subsistence needs are actually met by another program. Accordingly, appellants argue that Dajohn was entitled to GA because he was not actually receiving cash assistance and his receipt of food stamps and eligibility for Medi-Cal did not serve to meet his minimum subsistence needs. Respondents maintain Dajohn was properly viewed as receiving "support" from CalWORKs because he was eligible for and receiving some benefits through the program, albeit not cash aid.[5]

We begin with the terms of the governing statute and county regulation. Welfare and Institutions Code[6] section 17000 requires counties to "relieve and support" persons "not supported and relieved by" some other means. "Relieve" is defined as "to free from a burden," "give aid or help to," "to bring about the removal or alleviation of." (Webster's 9th New Collegiate Dict. (1984) p. 995.) Among the definitions of "support" are "assist, help," and "to pay the costs of, maintain." (*Id.*, at p. 1186.) These statutory terms, in and of themselves, do not resolve such questions as whether "relieve" and "support" necessarily entail cash aid as opposed to other forms of assistance, or what degree of relief and support is contemplated. The county's regulations former section 9-2-0.1 makes GA available to a child who has no source of "basic care and support" but does not "qualify" for any federal or state assistance program. "Qualify" means "meet the required standard." (Webster's 9th New Collegiate Dict., *supra*, at p. 963.) This leaves open the question whether "qualify" means simply "meet the required standard" for enrollment in an assistance program, regardless of what assistance is actually available, or means "meet the required standard" for receipt of particular benefits under the program. In sum, the standard definitions of the terms are too broad to resolve the parties' dispute, which amounts to whether the

receipt of other benefits would mean the family was continuing to receive aid and the MFG rule would continue to apply. Welfare and Institutions Code section 10052 defines " '[a]id' " as "financial assistance provided to or in behalf of needy persons under the terms of this division, including direct money payments and vendor payments." State regulations define "[r]eceived aid" as "received cash aid for himself/herself or on behalf of his/her eligible child(ren)." (State Dept. of Social Services Manual of Policies and Procedures, § 44-314.15.)

[5] Respondents argue that a rule requiring counties to provide GA to needy residents unless they actually receive aid through another program would have the "absurd" result of requiring counties to provide GA to needy residents who qualify for other aid programs but "fail to apply [to them] for any reason." This response distorts appellants' contention. Appellants' argument addresses a specific situation where a needy resident is qualified for an assistance program and, indeed, is viewed as participating in it, but through operation of the program rules in fact does not receive the support to meet subsistence needs. Appellants in no way suggest a needy resident who chooses not to apply for an available aid program must be found eligible for GA.

[6] All further section references refer to the Welfare and Institutions Code unless otherwise designated.

obligation imposed on the county by section 17000 to meet its residents' subsistence needs applies when another state or federal program addresses a limited aspect of those needs but otherwise leaves them unsatisfied.

■ "Section 17000 imposes upon counties a mandatory duty to 'relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident,' when those persons are not relieved and supported by some other means.[7] (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 676 [94 Cal.Rptr. 279, 483 P.2d 1231].) In the last several decades many specialized relief programs have been enacted to support indigent individuals, but section 17000 'creates "the *residual* fund" to sustain indigents "who cannot qualify . . . under any specialized aid programs." [Citations.]' (*County of San Diego* v. *State of California* (1997) 15 Cal.4th 68, 92 [61 Cal.Rptr.2d 134, 931 P.2d 312], italics added by the court in *County of San Diego* (*County of San Diego*).)" (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 991 [90 Cal.Rptr.2d 236, 987 P.2d 705], fn. omitted (*Hunt*).)

■ Counties have "broad discretion to determine eligibility for—and the types of—indigent relief" but "this discretion must be exercised in a manner that is consistent with—and that furthers the objectives of—state statutes. (*County of San Diego, supra*, 15 Cal.4th at p. 100; *Mooney* v. *Pickett, supra*, 4 Cal.3d at pp. 678–681.) These objectives are 'to provide for protection, care, and assistance to the people of the state in need thereof, . . . to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed,' and to administer such aid and services 'promptly and humanely.' (§ 10000.) Furthermore, '[t]he provisions of law relating to a public assistance program shall be fairly and equitably construed to effect the stated objects and purposes of the program.' (§ 11000.) 'County standards that fail to carry out section 17000's objectives "are void and no protestations that they are merely an exercise of administrative discretion can sanctify them." [Citation.] Courts, which have " 'final responsibility for the interpretation of the law,' " must strike them down. [Citation.] Indeed, despite the counties' statutory discretion, "courts have consistently invalidated . . . county welfare regulations that fail to meet statutory requirements. [Citations.]" [Citation.]' (*County of San Diego, supra*, 15 Cal.4th at p. 100.)" (*Hunt, supra*, 21 Cal.4th at pp. 991–992.)

■ Prior to 1991, each county was required to conduct "a specific factual study of its residents' actual subsistence cost of living before setting the

---

[7] Section 17000 provides: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."

amount of general assistance grants." (*Hunt, supra*, 21 Cal.4th at p. 992.) Courts required "that minimum subsistence must include allocations for housing, food, utilities, clothing, transportation, and medical care." (*Bell v. Board of Supervisors* (1994) 23 Cal.App.4th 1695, 1704 [28 Cal.Rptr.2d 919] (*Bell*).) In 1991, "the Legislature specified a minimum general assistance grant that it deems to be 'a sufficient standard of aid.' (§ 17000.5, subd. (b).)" (*Hunt, supra*, 21 Cal.4th at p. 992.) Section 17000.5, subdivision (a), provides that a county may adopt a standard of aid that is "62 percent of any guideline that is equal to the 1991 federal official poverty line and may annually adjust that guideline in an amount equal to any adjustment provided under the AFDC program." (*Bell, supra*, 23 Cal.App.4th at p. 1704; see *Hunt, supra*, 21 Cal.4th at p. 992.) "In effect, the statute means that a county need no longer set a standard of aid that meets the actual basic needs of its indigent general assistance recipients, but may provide a lower level of benefits, provided that standard of aid meets the 62 percent requirement." (*Bell, supra*, 23 Cal.App.4th at p. 1704.) "[A] county may satisfy its statutory obligation to support and relieve the indigent by providing in-kind aid such as food and shelter, and may reduce general assistance grant levels by the value of in-kind aid that is actually made available." (*Hunt, supra*, 21 Cal.4th at p. 992; see § 17000.5, subd. (a).)

■ " 'CalWORKs provides aid and services to families with related children under 18 whose parent or parents cannot support them due to death, incapacity, incarceration, unemployment, or continued absence from the home.' " (*Sheyko v. Saenz* (2003) 112 Cal.App.4th 675, 682 [5 Cal.Rptr.3d 350], quoting *Fry v. Saenz* (2002) 98 Cal.App.4th 256, 260 [120 Cal.Rptr.2d 30]; see *Barron v. Superior Court* (2009) 173 Cal.App.4th 293, 299 [92 Cal.Rptr.3d 394]; § 11250.) The program provides cash aid based on factors including family size and regional housing costs, up to a "maximum aid payment." (See §§ 11450, 11452, 11452.018.) Aid is provided to *families*, reflecting "the legislative judgment that ' "the family unit is of fundamental importance to society in nurturing its members, passing on values, averting potential social problems, and providing the secure structure in which citizens live out their lives. Each family unit has the right and responsibility to provide its own economic security by full participation in the work force to the extent possible. . . ." (§ 11205.) With these aims in mind, "[e]very county . . . shall administer [CalWORKs] in such a manner as to achieve the greatest possible reduction of dependency and to promote the rehabilitation of recipients." ' " (*Sheyko v. Saenz, supra*, 112 Cal.App.4th at p. 682, quoting *Fry, supra*, 98 Cal.App.4th at pp. 265–266.)

■ Under the MFG rule, a child born into a family that has received CalWORKs aid continuously for the 10 months prior to the child's birth is not counted in determining the amount of cash aid provided to the family.

(§ 11450.04.)[8] The MFG statute "was intended to promote personal responsibility of welfare recipients by discouraging growth in family size while they received public assistance and by encouraging them, through work incentives, to support their families and thereby eliminate their dependence on welfare. The MFG statute freezes a family's maximum welfare cash benefit at the same level if additional children (referred to as MFG children) are born to a family that has been on welfare for the previous 10 months. Thus, under the MFG statute, the MAP [(maximum aid payment)], a dollar amount that ordinarily increases with family size, does not increase when an MFG child is born. (§ 11450.04, subd. (a).) Although MFG children are not included in the assistance unit for purposes of determining the MAP, they are aid recipients for all other purposes." (*Sneed v. Saenz, supra,* 120 Cal.App.4th at pp. 1230–1231, fns. omitted.)[9] "For example, an MFG child retains eligibility for Medi-Cal benefits, food stamps, homeless assistance, permanent shelter payments and special needs payments." (120 Cal.App.4th at p. 1231, fn. 7.)

■ Appellants argue that the Legislature did not intend to preclude providing GA to a person in Dajohn's circumstances, as evidenced by the fact that it enacted certain exceptions to the rule of providing GA to "all" otherwise unsupported indigent residents without creating an exception for his situation. Legislative exceptions to the rule of section 17000 make ineligible for GA a person who is a member of an assistance unit receiving aid under CalWORKs but is ineligible for CalWORKs aid due to a conviction for a felony controlled substance offense (§§ 17012.5, 11251.3); a person found to have made a false statement or misrepresentation in order to obtain or maintain welfare assistance (§ 17015); a person who is fleeing prosecution or custody for a felony or violating a condition of probation or parole (§ 17016); a person who is eligible for CalWORKs, if the maximum payment standard for GA exceeds the level for CalWORKs (§ 17020); a person who is ineligible for CalWORKs aid because he or she received aid for a cumulative total of 60 months, until all of the children of the person on whose behalf aid was received are at least 18 years old (§ 17021, subd. (a)); and a person receiving CalWORKs aid on behalf of an eligible child who is ineligible for aid or

---

[8] Section 11450.04, subdivision (a), provides: "For purposes of determining the maximum aid payment specified in subdivision (a) of Section 11450 and for no other purpose, the number of needy persons in the same family shall not be increased for any child born into a family that has received aid under this chapter continuously for the 10 months prior to the birth of the child. For purposes of this section, aid shall be considered continuous unless the family does not receive aid during two consecutive months. This subdivision shall not apply to applicants for, or recipients of, aid unless notification is provided pursuant to this section."

[9] The MFG rule does not apply to certain children, including those conceived as a result of rape or incest reported within three months of the child's birth or failure of specified contraceptive methods. (§ 11450.04, subd. (b); *Sneed v. Saenz, supra,* 120 Cal.App.4th at p. 1230, fn. 5.)

An "assistance unit" is composed of persons in the family who receive, or are eligible to receive, a welfare grant. (*Sneed v. Saenz, supra,* 120 Cal.App.4th at p. 1230, fn. 6.)

whose needs are not taken into account in determining the amount of CalWORKs aid due to a sanction or penalty (§ 17021, subd. (b)).

Counties cannot apply these exceptions more broadly than they are defined by statute. Thus, in *Arenas, supra*, 93 Cal.App.4th at page 214, a single man was denied GA under a county ordinance precluding assistance to any person convicted of a drug-related felony. *Arenas* affirmed the trial court's determination that the ordinance was invalid because it conflicted with section 17012.5. (*Arenas, supra*, 93 Cal.App.4th at pp. 216–217.) Section 17012.5, as indicated above, makes a person ineligible for GA due to a conviction for a felony controlled substance offense if that person is a member of an assistance unit receiving aid but is ineligible for CalWORKs aid because of a drug-related conviction. The ordinance was invalid because it barred GA aid for *all* individuals convicted of drug-related offenses when the Legislature had more narrowly defined the class of people excluded from GA. (*Arenas, supra*, 93 Cal.App.4th at p. 217.)

Citing the rule of statutory construction "that where a statute enumerates those things to which it is applicable it is to be read as excluding all things not expressly mentioned" (*In re Marriage of Bertrand* (1995) 33 Cal.App.4th 437, 441 [39 Cal.Rptr.2d 151]), appellants contend that because no statutory exception addresses a child who is denied CalWORKs cash aid under the MFG rule while his family is receiving no cash aid from that program, Dajohn is entitled to GA. As seen above, several of the statutory exceptions to GA refer to aspects of CalWORKs, but none address the MFG rule, much less the specific application of the MFG rule where cash aid is no longer being received by the family because the eligible child no longer resides in the household. Under normal application of the MFG rule, a family that was receiving welfare at the time a new child was conceived, and remains continuously on welfare, must get by with the same amount of cash assistance after the new child is born. The result is obviously less money for the family to live on, but there is a cash grant from which the new child will be at least partially supported. In Dajohn's case, by contrast, application of the MFG rule meant no cash assistance at all for Dajohn and his mother, leaving Dajohn's subsistence needs—other than those satisfied by his food stamp allotment and Medi-Cal—completely unmet.

The statutory exceptions to GA do apply in some circumstances where the result may be to leave individuals utterly without support, such as where a CalWORKs recipient has exhausted the maximum 60 months of support (§ 17021), or where a person has been found to have committed an act to mislead or misrepresentation in order to obtain or maintain welfare assistance (§ 17015), or to be fleeing prosecution or custody for a felony, or violating a condition of probation or parole (§ 17016). These exceptions reflect legislative determinations regarding the duration of support and conduct deemed to

justify nonsupport. The MFG rule, as we have said, is intended as a disincentive to having additional children while living on welfare; the rule assumes the family is receiving some cash support, which will have to be stretched to include the new child. Thus, as normally applied, the MFG rule punishes the family for the parents' conception of a new child but does not remove *all* support. The effect of the MFG rule in the present case, however, is far more harsh, as it denies *any* cash assistance for an otherwise eligible child even though the family is no longer receiving the cash assistance that made the MFG rule applicable. Here, the only money available to Zeno and Dajohn was Zeno's Social Security income, which was meant for her own support only (*Rogers v. Detrich, supra,* 58 Cal.App.3d at pp. 100–101), and was found to be insufficient to meet the subsistence needs of the household. Although we are not reviewing the county's implementation of the MFG statute, it is difficult to see how its purpose—"to promote personal responsibility and encourage increased work efforts with a goal of eliminating a family's dependence on public assistance" (*Sneed v. Saenz, supra,* 120 Cal.App.4th at p. 1237)—could be met by denying subsistence level support to a disabled mother and seven-year-old child. At the very least, in this situation, where the MFG child is left with no means of support at all through circumstances beyond his control, we cannot assume the Legislature meant to preclude eligibility for GA when it did not explicitly say so.

Moreover, denying GA on the basis of a resource that necessarily fails to satisfy Dajohn's subsistence needs cannot be squared with section 17000. *Mooney v. Pickett, supra,* 4 Cal.3d 669 invalidated a county ordinance denying GA to an " 'employable single man.' " (*Id.,* at p. 671.) The petitioner, unable to find employment after his unemployment insurance benefits were exhausted, entered a job training program and applied for GA. (*Id.,* at pp. 673–674.) His application was denied on the basis of a regulation limiting eligibility for GA to persons with a medically verifiable physical or emotional incapacity. (*Id.,* at p. 674.) Rejecting the county's contention that "employability" was an economic resource it could take into account in determining eligibility for GA, *Mooney* explained: "Even in time of full employment a person may be physically and mentally fit, but lack necessary skills to obtain a job; in periods, such as the present, of substantial unemployment, even the skilled and experienced worker may be unable to obtain work. To the man who cannot obtain employment his theoretical employability is a barren resource; it is inedible; it provides neither shelter nor any other necessity of life. Until he can get a job, he does not differ in economic resources from the man whose unemployment stems from more personal disabilities." (*Id.,* at p. 680, fn. omitted.) The court held that "[a] rule excluding from its scope all unmarried employable persons, without regard for the practical impossibility of obtaining employment in a depressed labor market, leaves such individuals without any source of relief whatsoever—a result inconsistent with the

language and purpose of section 17000 and other statutes establishing General Assistance relief." (*Id.*, at p. 681.)

█ Appellants liken the situation of the unemployed man in *Mooney* to Dajohn's because the job training program in which that man was enrolled was funded in part by the United States Department of Labor, which appellants take to mean that he "arguably qualified for a 'federal . . . assistance program' " within the meaning of Alameda County General Assistance Regulations former section 9-2-0.1, yet he could not be denied GA. The job training program in *Mooney* provided no subsistence benefits, and did not purport to be an assistance program in the sense CalWORKs is, and Dajohn does receive *some* subsistence benefits through CalWORKs. But the point of *Mooney* is that a theoretical resource cannot be a basis for denying GA. *Mooney* held GA could not be denied on the basis of the applicant's "employability" because, without a practical opportunity for actual employment, the applicant would be left without any means of relief. Here, while the MFG rule would normally leave a family with some means of relief through CalWORKs, in Dajohn's situation the rule operated to deny him any means of meeting subsistence needs outside of food stamps and Medi-Cal. In these circumstances, the idea that Dajohn should be denied GA because he "qualified" for CalWORKs rests on a fiction, as he had no means of actual relief and support aside from GA.

*Bell, supra,* 23 Cal.App.4th 1695 similarly demonstrates the invalidity of attempting to limit GA based on theoretical resources. In *Bell,* the county's monthly GA grant amount was the total of specified standard allowances for housing, food, clothing, transportation and personal incidentals. *Bell* invalidated a portion of a county ordinance that decreased the monthly GA grant to a homeless recipient by the amount of the standard allowance for housing costs. The court explained, "While a county may condition shelter benefits on need, and accordingly may reduce the cash component of shelter assistance to the lesser cost to the recipient of shelter actually received or shown to be reasonably available, it cannot reduce or eliminate shelter benefits where adequate shelter is neither provided nor realistically available to recipients. Nothing in the provisions which permit counties to provide in-kind benefits in lieu of cash allows counties to reduce assistance below statutorily mandated minimums by including the value of illusory in-kind benefits in their assistance package. Because the Ordinance in question would allow that result, it goes beyond the boundaries of administrative discretion set down in *Mooney* v. *Pickett*[, *supra,*] 4 Cal.3d 669 . . . , and is therefore infirm." (*Bell, supra,* 23 Cal.App.4th at p. 1706.)[10] The county's denial of GA to Dajohn

---

[10] The same point can be seen in *Poverty Resistance Center v. Hart* (1989) 213 Cal.App.3d 295 [261 Cal.Rptr. 545, 271 Cal.Rptr. 214]. *Hart* involved a challenge to county levels of support prior to the enactment of section 17000.5 and found, among other things, that the

because he qualified for a state assistance program that in fact failed to address his subsistence needs beyond food stamps and Medi-Cal was premised on support just as illusory as the benefits at issue in *Bell, supra,* 23 Cal.App.4th 1695.

■ Arguing that a county cannot deny GA altogether where a person is receiving aid from another program but in an amount insufficient to meet the applicant's subsistence needs, appellants point to the statement in *Hunt* that section 17000 prohibits a county from imposing eligibility standards for subsistence health care "based upon criteria unrelated to individual residents' financial ability to pay all or part of the actual cost of such care." (*Hunt, supra,* 21 Cal.4th at p. 1015.)[11] *Hunt* rejected the contention that a county could satisfy its obligation to provide health care by providing GA in the amount defined by section 17000.5: "Although section 17000.5 relieved counties of the obligation of calculating general assistance grants based upon actual need, no similar provision allows counties to adopt an eligibility standard for the receipt of medical care that is not based upon actual subsistence needs. A number of decisions support the conclusion that a county may not condition the receipt of health care upon a financial eligibility standard that fails to consider individual residents' ability to obtain necessary care." (*Hunt, supra,* 21 Cal.4th at p. 1012.)

---

standard amount adopted for shelter and utilities was not supported by the evidence. (213 Cal.App.3d at p. 307.) Rejecting the argument that the gaps between the demonstrated minimal cost of living and the grant levels adopted by the county were cured by the county's contribution of funds for services such as soup kitchens, homeless shelters, and social workers, *Hart* stated: "There is no basis to infer that the soup kitchens are available to all general assistance recipients or adequate in scale to meet any discrepancy in food costs. Neither legal assistance nor assistance in applying for other government aid programs will meet the present subsistence needs identified in the cost-of-living survey. The homeless shelters, at best, supplant a monthly grant for some recipients, but afford nothing to those recipients who do not and cannot patronize them. . . . A social worker may assist in locating housing, but that simply does not pay the rent." (*Ibid.*) Although the evidentiary justification for GA support levels required in *Hart* is not applicable to counties providing the minimum level now specified in section 17000.5, the point that theoretical support does not actually provide for subsistence needs remains valid.

[11] In *Hunt,* the county decided that it could meet its obligation to provide medical care to indigent residents by providing GA in the amount determined according to the statutory formula set forth in section 17000.5. (*Hunt, supra,* 21 Cal.4th at p. 990.) Section 17000.5 permits counties to deduct from a GA cash grant the value of in-kind aid the county provides, including up to $40 per month of medical care, and the county further decided that it could cease providing medical care if it did not deduct $40 per month from GA grants. (*Hunt, supra,* 21 Cal.4th at p. 990.) *Hunt* rejected the proposition that a county was required to provide only $40 per month of medical care (*id.,* at pp. 1000–1002), and reaffirmed prior case law holding that a county has no discretion to refuse to provide medical care to "adult medically indigent persons," a category that may include individuals with sufficient resources that they are not eligible for GA (*id.,* at p. 1004).

*Hunt* does not address appellants' contention that GA must fill in where other programs provide some assistance but do not cover all of a needy resident's subsistence needs, as it expressly noted that the obligation to provide medical care is "independent of other obligations imposed by [section 17000], including the obligation to pay general assistance." (*Hunt, supra,* 21 Cal.4th at p. 1002.)[12] But *Hunt* does support a different point. In the circumstances of the present case, denying Dajohn GA because he was "qualified" for CalWORKs amounted to denying him GA because he was receiving Medi-Cal and food stamps, as these were the only benefits he was permitted under the MFG rule. Denying GA based on Dajohn's eligibility for Medi-Cal (through CalWORKs), however, cannot be reconciled with *Hunt*'s holding that counties' obligation to provide subsistence medical care is independent of their obligation to meet other subsistence needs. To deny Dajohn GA altogether because another program satisfied his subsistence *medical* needs would be to ignore the breadth of the county's obligation under section 17000. Similarly, to deny him GA altogether because he received food stamps, his only other tangible support through CalWORKs, would be anomalous, as counties may not reduce GA grants due to recipients' eligibility for or receipt of food stamps. (*Long v. City and County of San Francisco* (1978) 78 Cal.App.3d 61, 70–71 [144 Cal.Rptr. 64]; Food Stamp Regs., § 63-201.21 [<http://www.dss.cahwnet.gov/foodstamps/entres/getinfo/pdf/fsman2.pdf> [as of Mar. 2, 2011].)

Dajohn was denied GA because he was viewed as being supported by CalWORKs. Because of the operation of the MFG rule in his particular circumstances, rather than leaving the family to make do with its existing CalWORKs grant, CalWORKs provided no cash aid at all to the family. At oral argument, respondents attempted to justify this result by emphasizing that Zeno "broke the rules" by having another child while receiving aid from CalWORKs and also that appellant (then seven years old) had a remedy, as he could make himself eligible for CalWORKs assistance by leaving his mother's home. Like the caseworker who advised Zeno that her child could

---

[12] Appellants also rely upon *Alford v. County of San Diego* (2007) 151 Cal.App.4th 16 [59 Cal.Rptr.3d 596], which overturned a financial eligibility standard by which the county denied medical care to individuals earning more than a specified amount per month or having assets of more than a specified amount. *Alford* held the eligibility standard void because it was based upon "an inflexible income cap that denies any medical care to indigent residents, in particular the working poor, whose monthly salary exceeds that cap by even $1, without consideration of their ability to pay for some or all of their medical care." (*Id.,* at p. 20.) The court noted, "courts have long concluded, under both the common law and section 17000, that a county's obligation to provide subsistence medical care to the poor includes not only those with no ability to pay, but also those with a limited ability to pay, sometimes referred to as the 'working poor.' " (*Alford, supra,* 151 Cal.App.4th at p. 29.) Like *Hunt, Alford* was concerned with the provision of subsistence medical care, not with GA cash aid.

receive aid if she gave him up, respondents propose that Zeno and Dajohn should simply cease living as a family. Such a "solution" cannot be deemed to have been authorized by the Legislature, which in section 17000 imposed upon the counties a mandatory duty to relieve and support all indigent persons not supported by other means, including more-specialized aid programs, such as CalWORKs. (*Hunt, supra*, 21 Cal.4th at p. 991.) GA, "a program of last resort" (*Boehm v. Superior Court* (1986) 178 Cal.App.3d 494, 499 [223 Cal.Rptr. 716]), cannot be denied on the basis of county regulations implementing the GA program that are inimical to the objectives of section 17000. (*County of San Diego v. State of California, supra*, 15 Cal.4th at p. 100.)

■ To the extent it excludes from GA eligibility a CalWORKs MFG child whose family does not in fact receive any cash assistance from CalWORKs because the older eligible CalWORKs children no longer reside with the family, Alameda County General Assistance Regulations former section 9-2-0.1 is invalid.

The judgment is reversed.

Lambden, J., and Richman, J., concurred.

A petition for a rehearing was denied March 28, 2011, and respondents' petition for review by the Supreme Court was denied May, 18, 2011, S192148.